**R. L. LANE et al., Appellants,**

**v.**

**SECURITY TITLE & TRUST COMPANY et al., Appellees.**

**No. 16338.**

Court of Civil Appeals of Texas.

Dallas.

July 24, 1964.

Rehearing Denied Sept. 25, 1964.

 

Wynne, Jaffe & Tinsley, Yandell Rogers, Jr., Daugherty, Bruner, Kelsoe & Lastelick, G. H. Kelsoe, Jr., Dallas, for appellants.

Biggers, Baker, Lloyd & Carver, Ralph D. Baker, and Clifford S. Dillard, Dallas, for appellees.

BATEMAN, Justice.

Our former opinions are withdrawn and the following substituted therefor.

This suit was filed by R. L. Lane, S. E. Case and Morris I. Jaffe against W. B. Post, doing business as Security Title Company, and Security Title & Trust Company of San Antonio, Texas, a corporation, for actual damages alleged to have been suffered because two outstanding liens were not shown on certain Mortgagee's Title Policy Binders, and for exemplary damages because the representations made in said Binders, as well as in certain telephone conversations, as to the absence of the two outstanding liens, were made willfully and with knowledge of their falsity. After jury verdict on special issues the court rendered judgment for the plaintiffs against the defendants, jointly and severally, for actual damages of $14,938.65, the amount of the two outstanding liens, and against Post for exemplary damages of $5,000. The jury had awarded $25,000 in exemplary damages against Security Title & Trust Company, but the court disregarded this finding in rendering judgment. All parties have appealed and to avoid confusion will be herein called by their proper names, except that the corporate defendant Security Title & Trust Company will be called Security. Lane, Case and Jaffe expressly limit the scope of their appeal to that portion of the judgment which decreed that they take nothing on their prayer for exemplary damages against Security.

*Facts*

George C. Rorie, Jr., owner of certain lots in the City of Dallas, entered into a contract with Perry Greenspan, Jr. by which

the latter agreed to construct certain apartment buildings thereon. Lane, Case and Jaffe undertook to arrange for the interim financing through the First National Bank in Dallas. Jaffe ordered from Post, the local representative of Security, a Mortgagee's Title Policy Binder on Interim Construction Loan. Jaffe is shown thereon as lender or mortgagee, and the instrument recites: "For the purpose of issuance of the Mortgagee's Title Policy herein referred to the Company certifies that a good and indefeasible title to the land described in Schedule A hereof, was on the 9th day of April, A.D., 1959 at 9:00 o'clock A.M., vested in George C. Rorie, Jr. SUBJECT ONLY to the defects, objections, liens and encumbrances shown in Schedule B hereof, and the lien described in Item 1, Schedule A, hereof." The lien described in Item 1 of Schedule A is a mechanic's lien note in the sum of $285,000 executed by Rorie payable to the order of Greenspan dated April 8, 1959, recited to have been transferred to Jaffe by assignment dated April 8, 1959. No other liens were shown in Schedule B or elsewhere in the instrument.

The binder also provides that upon certain contingencies and payment of the applicable premium therefor, the company will issue its Mortgagee's Policy of Title Insurance in the face amount ($285,000) covering the lien described in Schedule A, "showing under Schedule B thereof only such exceptions as appear in Section Two of Schedule B hereof, * * *." It was further provided: "This Binder is preliminary to the issuance of the Mortgagee's Policy of Title Insurance referred to above and in no event shall it be effective after one year from the aforesaid date. * * *"

Later Jaffe informed Post that the First National Bank in Dallas insisted that the binder be issued in its name. At Jaffe's request Post, as issuing agent of Security, issued another such binder, similar in all respects to the one described above except that (1) it was addressed to First National Bank in Dallas instead of Jaffe; (2) the

effective date was July 17, 1959; (3) the space for the owner's name was left blank; and (4) the lien described in Schedule A was a deed of trust dated July 10, 1959 executed by George C. Rorie, Jr. to John Kipp, Trustee, to secure a $285,000 note executed by Rorie and payable to the order of Jaffe as trustee, recited to have been transferred to the First National Bank in Dallas.

At the time these binders were issued Post and one Frederick were partners doing business as Security Title Company and were issuing agents for Security. The printed forms for these binders as well as for policies of title insurance were furnished by Security to Post and Frederick, who were authorized to issue them in any amount. They were not shown to be authorized to perform any other act on behalf of Security. Frederick issued the first binder and Post issued the second one. Jaffe testified that he talked to Post on the telephone shortly before each binder was issued, and on each occasion he told Post that he wanted to make certain that the land was free and clear of any debts because otherwise he could not get the interim financing at the bank. In the second conversation he told Post that he, Lane and Case would endorse the paper to the bank, that they could not get the financing otherwise and could not afford to arrange for interim financing unless they knew that there was not another lien on the property. He and his associates relied on Post's representations over telephone, as well as those contained in the two binders, as to the absence of other liens on the land. Post denied he had told Jaffe over telephone that there were no liens on the property. Frederick and Post dissolved their partnership in the spring of 1960, Frederick leaving the country and Post continuing to operate the business alone.

Notwithstanding Post's assurances to the contrary, there were two liens on a substantial portion of the property. One secured a note payable to D. B. Blaine dated

March 3, 1959, in the sum of $5,000. Post was the trustee named in the deed of trust. The other lien secured a note for $9,300 dated April 8, 1959 (the day before the issuance of the first binder), held by the South Oak Cliff Bank. Both of these notes and deeds of trust were signed by Rorie after having been prepared by either Frederick or Post. Post testified that he did not know of the Blaine $5,000 lien at the time the first binder was issued, or even of the issuance of the first binder at that time, but that he did know about it and the existence of both liens when he issued the second binder.

Greenspan did not complete his contract, and Jaffe, Lane and Case were compelled to complete it. Jaffe learned of the two outstanding liens in January 1960, and in May 1960 the insurance company making the permanent loan insisted upon the note being signed by Jaffe, Lane and Case and that they be at least part owners of the property, after which Rorie deeded an undivided one-fourth interest each to Jaffe, Lane and Case, reserving an undivided one-fourth interest to himself. Jaffe called upon Post and Security to discharge the two outstanding liens and obtain releases thereof, which demand was refused; and Jaffe testified that it then became necessary for these two liens to be paid out of the proceeds of the permanent loan. They later sold the property at a loss.

The closing of the permanent loan and the sale of the property were handled through another title company at the insistence of the insurance company making the permanent loan. In the meantime Post had purchased the $9,300 note from the South Oak Cliff Bank and obtained control of the Blaine note. His reason for doing so, he said was to enable him to subordinate those two liens to the lien of the First National Bank in Dallas and thus protect that bank. He didn't tell Security about the problem until February of 1960 because he thought Rorie and Greenspan would pay them. When he learned that the per-

manent loan was being closed through another title company, he notified that company of the two liens and insisted upon and received payment thereof.

The jury found, in answer to special issues, that Post represented to Jaffe that the property was free and clear of all liens, that this representation was false, that Jaffe and his associates relied upon the representation, and that they paid off the two existing liens. The jury also found that the representation was made willfully, and awarded exemplary damages of $5,000 against Post and $25,000 exemplary damages as against Security.

### Opinion as to Liability of W. B. Post

■ By his first and second points of error, Post contends that the court erred in overruling his motion for instructed verdict since his only obligation under the title binder was to issue a mortgagee's title policy according to the terms of the binder, and there was no evidence that he had refused to do so. These points are without merit and are overruled. The plaintiffs did not sue on either of the binders as a contract but in tort on the theory that the false representations contained in the binders, as well as in a telephone conversation, constituted a fraud which resulted in damage to them. The record before us indicates clearly that Jaffe made the position of himself and his associates abundantly clear to Post, and that Post, with full knowledge of that position, issued the second binder (his partner having previously issued the first) containing the false statement concerning liens. Under the peculiar facts and circumstances of this case, we hold that Jaffe, Lane and Case alleged and proved a cause of action against Post for their actual damages. Chicago, R. I. & G. Ry. Co. v. Duncan, Tex.Civ.App., 273 S.W. 908, err. ref.

■ By his third and fourth points of error Post contends that Jaffe, Lane and Case, having paid the outstanding liens, thus precluding Post from pursuing his remedies against Rorie, are estopped to re-

cover such sums in this case and have waived their right to do so. These points must likewise be overruled. The liens having been paid at the insistence of Post, he is in no position to say now that he was thereby deprived of the right and opportunity to collect these debts from the man who really owed them. Jaffe, Lane and Case are not estopped from claiming their damages because, to protect their equity, they paid debts which Post was demanding be paid. Also, no special issues were requested on these defenses of estoppel and waiver, and they were therefore waived. Rule 279, Vernon's Texas Rules of Civil Procedure; Newton v. Town of Highland Park, Tex.Civ.App., 282 S.W.2d 266, 276, err. ref. n. r. e.

■ By his fifth point of error Post complains of the overruling of his motion for judgment *non obstante veredicto* because no issue of damages was submitted to the jury. Issues were submitted as to whether Jaffe, Lane and Case paid the debts secured by the two outstanding liens, and both were answered "Yes". This established the damages alleged and concerning which evidence was introduced. Chicago, R. I. & G. Ry. Co. v. Duncan, Tex.Civ.App., 273 S.W. 908, err. ref.; Fordtran v. Cunningham, Tex. Civ.App., 177 S.W. 212, err. ref. The fifth point is overruled.

■ Post's sixth and seventh points of error complain of the judgment against him for exemplary damages; first, because the definition of the term "exemplary damages" in the charge was erroneous, and second, because "the evidence did not support such issues or judgment." These points are without merit and are overruled. The definition was:

"EXEMPLARY DAMAGES * * means an amount which you may in your discretion award in addition to actual damages as a matter of punishment and as an example to others, and although such exemplary damages should not include any amount other-

wise found by you as actual damages, same may include reasonable compensation for inconvenience."

Post's objection thereto was that it did not include the instruction that the acts complained of must be unlawful and partake of a wanton and malicious nature. This objection was properly overruled because the plaintiffs were under no such burden. Special Issue 9, inquiring as to exemplary damages against Post, was conditioned upon an affirmative answer to No. 8, which inquired as to whether the false representation was made "willfully," which term was defined as "the intentional and purposeful disregard of the known rights of another." There was no objection to this definition. The affirmative answer to Special Issue 8 was equivalent to a finding of such evil intent as to make the representation wanton or malicious. Connor v. Sewell, 90 Tex. 275, 38 S.W. 35; 17 Tex.Jur.2d, Damages, p. 245, § 178.

■ Post admitted that he knew of the outstanding liens when he issued the second binder certifying that there were no such liens. There was evidence that he had been told that Jaffe, Lane and Case were having to obligate themselves personally to the bank and that they could not afford to do so if other liens were on the property. The jury had a right to believe from the evidence that Post's action was in "intentional and purposeful disregard of the known rights" of Jaffe, Lane and Case. This is another way of saying that the evidence was sufficient to support the finding of willfulness and the award of exemplary damages.

■ Post also complains that he was precluded from showing his reasons for doing what he did by the court's statement from the bench that certain proffered testimony was immaterial and inadmissible because it would bear only on exemplary damages and the court did not consider that the issue of exemplary damages was in the case. However, Post made no effort to complete his

bill of exceptions, leaving us to wonder what the testimony would have been. Rules 372, 418(c), T.R.C.P. Moreover, the record indicates that Post made no effort to reopen the testimony when the court decided to submit issues on exemplary damages. Therefore, whatever rights he may have had in this respect were waived.

Finding no error requiring reversal of the judgment against Post, we affirm the same.

### Opinion as to Liability of Security

We have concluded that the trial court was correct in rendering judgment against Security for the actual damages and in refusing to render judgment against it for exemplary damages.

■ It appearing from undisputed evidence that Post was a local agent of Security and that his complained of acts were done within the scope of his employment and authority as such agent, Security is bound thereby and liable for the actual damages proximately resulting therefrom. Restatement of the Law of Agency, §§ 257, 258; 3 Am.Jur.2d, Agency, p. 628, § 264; Amarillo Nat. Life Ins. Co. v. Brown, Tex. Civ.App., 166 S.W. 658, 663, err. ref.; Mutual Reserve Life Ins. Co. v. Seidel, 52 Tex. Civ.App. 278, 113 S.W. 945, no wr. hist. Couch on Insurance 2d, §§ 26:437, 26:438.

Security contends, by its first, second, third, sixth, seventh, eighth, tenth and eleventh points of error, that its rights, duties and obligations are to be measured by the provisions of the title binders in question; that the second title binder, which replaced the first, was a contract between it and First National Bank in Dallas, to which contract the plaintiffs were not parties; that the binders by their terms ceased to be effective when the transaction was not closed within the time specified; that since it in no way breached its contract its motions for instructed verdict, for judgment on the verdict and for judgment *n. o. v.* should have been granted; and that it was error

to permit plaintiffs to show by parol evidence that the second binder was issued for their benefit. All of these points are based upon the erroneous premise that this was a suit on the binder as a contract, whereas it clearly appears from the record that the suit is in tort for damages for fraudulent misrepresentations. See Chicago, R. I. & G. Ry. Co. v. Duncan, Tex.Civ.App., 273 S.W. 908, err. ref. Under the peculiar facts of this case, we hold that Lane, Case and Jaffe alleged and proved a cause of action *ex delicto* against both Post and Security for their actual damages, and the said points of error are overruled.

Security's fourth point of error, that the court erred in overruling its objection to the court's charge, on the ground that Post was prevented from issuing the title policy by acts of the plaintiffs, is also based upon the theory that this is a suit on contract. Moreover, we do not find in the record that any such objection was actually made. For both reasons the point is overruled.

■ Security's fifth point complains of the overruling of its exception to a certain paragraph of the petition because the petition ignored the fact that the plaintiffs, who were conducting a joint enterprise with Rorie, had full opportunity to collect from Rorie the damages sustained. This point, not being briefed, is waived. Rule 418(c), T.R.C.P.; Gass v. Baggerly, Tex.Civ.App., 332 S.W.2d 426, no wr. hist. Moreover, the special exception was properly overruled. The facts alleged to have been "ignored" were not a part of the cause of action being pleaded and were at most an affirmative defense. A plaintiff is not required to take cognizance of and negative every defense which the defendant may or may not see fit to raise.

By its ninth point Security complains of the court's order overruling its motion to disregard jury findings that the plaintiffs relied on the misrepresentations in paying the two liens on the property. It is obvious, we think, from what we have said

above that these findings, being material and supported by plaintiffs' pleadings and by the evidence, could not properly have been disregarded. The point is accordingly overruled.

Security also moved to disregard the jury finding of $25,000 exemplary damages against it. As this motion was sustained, we turn now to the limited scope appeal of Lane, Case and Jaffe. Relying on King v. McGuff, 149 Tex. 432, 234 S.W.2d 403, they contend under their first point of error that since Post was acting in a managerial capacity for Security in making the fraudulent misrepresentations, Security is liable for the exemplary damages found by the jury.

We do not agree with the premise that Post was acting in a managerial capacity for Security. He and Frederick operated their own business as partners under an assumed name. They were employed only as issuing agents by Security, with authority only to issue title policies and binders on printed forms furnished to them by Security and bearing the signatures of its president and secretary and its corporate seal. If they had been managers of Security's offices in Dallas, instead of their own, they doubtless would have had authority to obligate Security for overhead expenses, such as the wages of clerical employees, rent, utilities, etc., but no such authority was shown. In fact, Post and his partner were not shown to have authority to do anything for Security except to countersign and deliver the binders and policies. There is no pleading, proof or finding that Post or his partnership constituted a department or division of Security, or that Security specifically authorized or ratified the actions complained of herein.

We hold that under these circumstances there is no liability on Security for exemplary damages and that the trial court properly disregarded the jury award of punitive damages as against it. King v. McGuff, 149 Tex. 432, 234 S.W.2d 403; 17 Tex.Jur. 2d, Damages, pp. 250–1, § 183; Mutual Life

Ins. Co. v. Hargus, Tex.Civ.App., 99 S.W. 580, no wr. hist. Accordingly the first point asserted by Lane, Case and Jaffe is overruled.

Their second point, urged alternatively, is that the court erred in refusing to submit to the jury the question of whether Post acted as agent and manager for Security without supervision and control. In our opinion there is no evidence in the record to support such an issue. Moreover, as worded, it was an immaterial issue. The second point is also overruled.

Finding no error sufficient to require reversal, we affirm the judgment.

Affirmed.