COMMUNITY SAVINGS AND LOAN AS-
SOCIATION OF FREDERICKS-
BURG, Texas, Appellant,

v.

LUBBOCK SAVINGS AND LOAN ASSOCI-
ATION OF LUBBOCK, Texas, Appellee.

No. 8452.

Court of Civil Appeals of Texas,
Amarillo.

April 15, 1974.

Rehearing Denied May 13, 1974.

Small, Crain & Werkenthin, Ed C. Small, Austin, for appellant.

Turner, Rodgers, Sailers, Jordan & Calloway, Frank E. McLain, Dallas, for appellee.

REYNOLDS, Justice.

A plea of privilege, controverted on the ground that actionable fraud was committed in the county of suit, was overruled. As a matter of law, the venue facts fail to establish actionable fraud. Reversed and rendered.

Lubbock Savings and Loan Association of Lubbock, Texas, referred to hereafter as Lubbock, filed this suit in Lubbock County against Community Savings and Loan Association of Fredericksburg, Texas, hereafter referred to as Community. The suit is for damages arising out of a loan participation transaction. Lubbock alleges it was fraudulently induced by Community to enter into the transaction. Community filed its plea of privilege seeking to remove the suit to Gillespie County, its domiciliary county. Controverting the plea, Lubbock asserted its right to maintain the suit in Lubbock County under subdivision 7 of the general venue statute, Vernon's Ann.Civ.St. art. 1995.

The litigable transaction is the fifty percent participation by Lubbock with Community in a $900,000 loan made by Community to Joe Novotny for his purchase and development of Bandera County land which secured the payment of the loan. Lubbock alleges that it was induced to participate in the loan by various material misrepresentations; but, to maintain venue in Lubbock County, Lubbock depended on its evidence of a representation that the land "had a value of $1.25 million" as being the false representation that Lubbock believed to be true, and acted in reliance on, to its damages because the loan was not paid when due and the land, as shown by a later independent appraisal, was worth only $350,000 on the date of the loan.

According to Sid Lowery, then president of Lubbock and one of the three members of its executive committee, the representation that the land had a value of $1.25 million was made to him by Ray Cowan during a long distance telephone conversation Cowan originated to ask that Lubbock participate with Community in making the loan. At that time, Cowan was a major stockholder in, and a previous president of, Community; moreover, Cowan then was the controlling stockholder of Lubbock, owning more than seventy-five percent of its permanent capital stock, and he was one of the three members of its executive committee.

Lowery understood that Cowan was representing Community in the transaction because Cowan was a principal stockholder and had represented Community in previous loan participation transactions with

Lubbock, although Lowery conceded that whatever Cowan was doing in representing Community, he was doing the same thing representing Lubbock. Lowery stated that he believed Cowan's representations to be true and that he acted in reliance thereon; and, after the conversation with Cowan, "We agreed to enter into the participation at that particular time." [1]

The participation transaction was approved by Cowan and Lowery in their official capacities as members of Lubbock's executive committee, and Lubbock's board of directors had nothing to do with the transaction. The executive committee was the only body authorized to make loans in excess of $35,000, and it was authorized by the board of directors to transact business, including participations in loans, between board meetings.

The venue facts compel the conclusion that, under the applicable principles held operative in Goldstein v. Union Nat. Bank, 109 Tex. 555, 213 S.W. 584 (1919), Cowan's knowledge of the loan transaction was, as a matter of law, imputable to and binding on Lubbock. The consequence is that Lubbock did not prove actionable fraud permitting the retention of venue in Lubbock County under subdivision 7, V.A. C.S., art. 1995.

Lubbock was engaged in the business of lending money. The authorization for and the approval of a loan participation of the magnitude of the instant loan was solely within the authority of its executive committee. Cowan was a member, if not the dominant member, of that committee when it, acting through Cowan and Lowery, approved the transaction for Lubbock pursuant to the knowledge of, and on the representations made by, Cowan. There is no evidence that Cowan had any personal interest in the loan transaction that would render it inequitable to charge Lubbock with his knowledge; there is no evidence that Cowan was disqualified from exercising the authority entrusted to him as an executive committee member. It is not contended, and it cannot be assumed, that Cowan, as the owner of seventy-five percent of Lubbock's capital stock, was acting adverse to Lubbock's interests which were, in fact, his own interests. Clearly, Cowan was acting in the scope of his authority as an executive committeeman in giving his approval to the loan participation transaction for Lubbock. Thus, through Cowan, Lubbock had constructive notice of, and became chargeable with, the knowledge that Cowan acquired during the course of the transaction. Lubbock, having authorized Cowan to take the action he did, cannot escape the consequences of his act by denying notice of, and claiming fraud resulting from, the material facts known to Cowan, its authorized agent, which are imputable to Lubbock.

The judgment of the trial court is reversed, and judgment is here rendered ordering the cause transferred to Gillespie County.

---

1. Although Lowery said he had discretionary power respecting the loan participation and that if Cowan had not given a reasonable explanation of the land value, he would not have funded it, he acknowledged that Cowan was his boss and that if Cowan told him to make the participation, he would make it; furthermore, Lowery admitted that Cowan originated the loan and both associations were depending on him as their major stockholder to make the loan, and that the loan was made at Cowan's direction.