GREAT AMERICAN MORTGAGE INVESTORS, Appellant,

v.

LOUISVILLE TITLE INSURANCE COMPANY, Guardian Title Company and Max E. Clark, Appellees.

No. 18223.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 28, 1980.

Rehearing Denied April 3, 1980.

 

Shannon, Gracey, Ratliff & Miller, Kleber C. Miller, Richard G. Williams and Daniel L. Lowry, Fort Worth, for appellant.

Biggers, Beasley, Amerine & Earle, Larry F. Amerine, Rick W. Hightower, and Jeffrey A. Hage, Dallas, for Louisville Title Ins. Co.

Meier & Keller, William C. Meier and Wallace T. Keller, Euless, for Guardian Title Co.

George J. Petrovich, Jr., Law Offices of Max E. Clark, and Lawrence E. Meyers, Fort Worth, for Max E. Clark.

## OPINION

SPURLOCK, Justice.

This is an appeal from a take nothing judgment rendered in a suit alleging the tort of negligent misrepresentation. Great American Mortgage Investors (GAMI), plaintiffs below, brought this action against defendants below, Louisville Title Insurance Company, Guardian Title Company, and Max E. Clark, a title attorney and agent for both title companies, seeking damages allegedly sustained as a result of GAMI's reliance on misrepresentations in a mortgagee's information letter (MIL) and title policy binder which erroneously stated that there were no deed restrictions covering the property upon which GAMI was financing the construction of an apartment complex.

We affirm.

Because numerous parties and a rather complex loan transaction are involved in this case, it is helpful to identify the parties and briefly discuss some of the pertinent facts.

Ridglea Park Corporation was a real estate development company. Through its president, Pat Reed, it planned to build three apartment complexes in the Ridglea Park Addition to the City of Fort Worth. Prior to the construction of any apartments, an application was made to change the zoning of this area from single family to a classification allowing apartments. A compromise with adjoining landowners was reached allowing the construction of apart-

ments which complied with a number of agreed restrictions. These restrictions were prepared and filed of record in 1964 covering the entire 40 acre addition. They include a required number of square feet per dwelling unit, a 75% masonry requirement, a height restriction of two stories, a landscaping restriction, and a restriction upon the number of dwelling units allowable in one building.

Ridglea Park planned to build its three complexes one at a time. The first two complexes were completed and will no longer be noticed. This case deals with the construction of the third complex. Ridglea Park needed interim and long term financing. Through a number of mortgage brokers GAMI, a mortgage lending institution, with its principal place of business in Atlanta, Georgia, became interested in the project. Before GAMI would make a loan it required a local bank to act as a lead lender. The Wynnewood State Bank in Dallas became the lead lender and executed the loan documents. GAMI funded the loan and construction began.

Before the complex was completed, several adjacent land owners obtained an injunction preventing Ridglea Park from any further construction which violated the deed restrictions. In order to complete construction Ridglea Park had to demolish some of the buildings which were three stories high in violation of the height restriction, and alter the exterior of other buildings to make them 75% masonry. It was also necessary to acquire more land to have the requisite number of square feet of land per dwelling unit. The expense of compliance with the restrictions and other cost overruns caused Ridglea Park to default. The Bank foreclosed on the property. GAMI bought the Bank's interest in the project and the Bank conveyed title to the project to GAMI, together with all of the Bank's choses in action arising from its involvement therein.

Succinctly stated GAMI's position in the trial court was that before the loan was closed the Bank had requested that the defendants provide it with title information on the land upon which the complex was to be built. It is undisputed that the defendants have an agency relationship with each other concerning the acts complained of in this case. The defendants sent the Bank title information in a mortgagee's information letter (MIL) dated May 4, 1971 covering the lots upon which the complex was to be built. This May 4, MIL stated that there were no restrictions on these lots *except those recorded* in volume 3955, page 420 of the Deed Records, Tarrant County, Texas. Thus it revealed that there were restrictions recorded.

In addition to its first lien on the lots upon which the complex was to be built, the Bank wanted a second lien on some additional lots for extra security. The defendants issued a second MIL dated May 12, 1971 which covered the lots for both the first and second liens. The May 12th MIL, in the space provided for deed restrictions, stated "none". On May 17, 1971 a title policy binder was issued stating there were no deed restrictions of record. Max Clark explained that the typist who prepared the May 12th MIL mistakenly typed "none" rather than "none, except for those recorded in volume 3955, page 420 of the Deed Records, Tarrant County, Texas", as found on the May 4th MIL. He further explained that this error was perpetuated because the title binder was prepared from the May 12th MIL.

GAMI claimed it relied on misrepresentations of the May 12th MIL and the title binder. It asserted that had it known of the restrictions, it would have had an architect inspect the construction plans to determine whether the contemplated construction would violate the restrictions before construction began. GAMI maintains that it first learned of the restrictions when Ridglea Park was enjoined from continuing to violate them. GAMI notes that by this time it was too late as the damage had already occurred.

By its answers to the thirty special issues submitted by the trial court, the jury found that the building project had violated the restrictions; and that the May 12th MIL and the title binder both stated that there

were no restrictions. However, the jury failed to find that either of these representations was material. The jury also found that both the May 12th MIL and the title binder negligently misrepresented that there were no restrictions. The jury failed to find that the Bank had justifiably relied on either of these misrepresentations. It found that the Bank knew of the restrictions before the loan was closed. The jury found that GAMI justifiably relied on the misrepresentation in the May 12th MIL, but failed to find that the MIL was intended for GAMI's benefit and guidance. The jury also found that GAMI justifiably relied on the title binder and that the binder was intended for GAMI's benefit and guidance. Additionally, the jury failed to find that GAMI knew of the restrictions before the loan was closed.

Concerning damages the jury failed to find that the Bank was damaged. It found that GAMI was damaged as a result of its reliance on the misrepresentation in the title binder. It found that $160,000.00, the cost of bringing the project into compliance with the restrictions, would reasonably compensate GAMI for damages resulting from the violation of the restrictions.

Both GAMI and the defendants moved for judgment on the verdict. The trial court granted the defendants' motion and rendered a judgment that GAMI take nothing. In order to facilitate clarity in the consideration of GAMI's points of error, it is helpful to first address two issues raised by the points and arguments thereunder, and which apply generally to GAMI's allegations of error. The first are the threshold questions of whether the tort of negligent misrepresentation is recognized in Texas, and, if so, whether it applies to title insurers. Negligent misrepresentation is a rather recent development in tort law and has been described in the Restatement (Second) of Torts § 552 (1977), as follows:

### "TOPIC 3. NEGLIGENT MISREPRESENTATION

"§ 552. Information Negligently Supplied for the Guidance of Others

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

An action for negligent misrepresentation has been recognized in Texas. *Rosenthal v. Blum*, 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.). That court stated:

"Most jurisdictions, and particularly the more modern decisions, have recognized a cause of action on negligent misrepresentation. 37 Am.Jur.2d 277, Fraud And Deceit, § 209. 32 A.L.R.2d 232. It constitutes a specie of remedial fraud in Texas. *Shatterproof Glass Corporation v. James*, (Tex.Civ.App.—Fort Worth, 1971, writ ref. n. r. e.) 466 S.W.2d 873, 879; *Cameron v. First Nat. Bank*, (Tex.Civ. App.—Galveston, 1917, writ ref.) 194 S.W. 469, 476; *Durham v. Wichita Mill & Elevator Co.*, (Tex.Civ.App.—Fort Worth, 1918, writ ref.) 202 S.W. 138, 140. Cf. *American Indemnity Co. v. Ernst & Ernst*, (Tex.Civ.App.—Waco, 1937, writ.

ref.) 106 S.W.2d 763. Its elements are set forth in Tentative Draft No. 12, Restatement of Torts (2nd ed., 1966), § 552, under Topic 3 of that work, . . . ."

The court in *Rosenthal* further stated that the defendant supplied false information to the plaintiff for plaintiff's guidance in his business transaction. The court concluded that the plaintiff stated a cause of action holding as follows:

"[T]hat the defendant failed to exercise reasonable care in several particulars in the gathering of the information, that the plaintiff *relied* on the information in a transaction the defendant intended it to influence; and that the plaintiff thereby suffered pecuniary loss. These pleadings state a cause of action on negligent representation." (Emphasis ours.)

■ Texas recognizes a cause of action for negligent misrepresentation. In this case the defendants contend that an action for negligent misrepresentation does not apply to title companies. They contend the rights, duties, and obligations of a title insurer are to be measured by the provisions of the MILs and title binder in question. They conclude that GAMI's only cause of action, if any, is for breach of contract. Defendants also assert that title insurers have no duty to reveal deed restrictions or title defects because they are not title abstractors and do not have the duty owed by an attorney who examines a title to report the condition of the title to his client. A title policy is a contract of indemnity based upon the terms of the policy.

The same contentions were made and rejected in the case of *Lane v. Security Title & Trust Company*, 382 S.W.2d 326 (Tex.Civ. App.—Dallas 1964, writ ref'd. n. r. e.). Here as in *Lane* the cause of action against the insurer was in tort rather than on a title binder as a contract. Also in *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977), the Texas Supreme Court reversed the court of civil appeals, holding that a title insurer can be liable for fraud in misrepresenting the state of the title. A close reading of the supreme court's opinion reveals that the tort of negligent misrepre-

sentation is included within the ambit of the decision. The court of civil appeals, 537 S.W.2d 55 (Tex.Civ.App.—Corpus Christi 1976), had held that the failure of a title insurer to show a pipeline easement as an exception to its policy would not support a cause of action because the title insurer had no duty to disclose any such encumbrance.

■ It is well settled that even though one does not have a duty to act, if one acts voluntarily, he must do so with due care and is generally liable for negligence. In our case whether the title insurer had the duty to disclose the existence of the deed restrictions is immaterial because the May 12, MIL and the title binder actually represented that no deed restrictions were in existence. Having made the representation the title insurer is held to the standard of reasonable care and may under the proper circumstances be liable in tort for damages caused by a negligent misrepresentation. In other words, under the proper circumstances the tort of negligent misrepresentation can apply to title insurers.

The second issue which prefaces detailed analysis of GAMI's points of error is what legal relationship GAMI had with the Bank regarding this transaction. The defendants contend that GAMI and the Bank were joint adventurers or agents, each for the other. GAMI characterizes the relationship as at most buyer-seller and/or trustee-beneficiary. The characterization of the relationship between GAMI and the Bank is crucial to the disposition of this case.

Before entering into this transaction GAMI and the Bank executed an agreement called a Participation Agreement. This agreement is largely determinative of their relationship concerning this transaction. The agreement provides that the Bank would actually make the loan to Ridglea Park in its name, but would sell GAMI an undivided interest in the loan. GAMI in fact purchased a 95% undivided interest in the loan. The bank retained the remaining 5%. The agreement states that the Bank could, after notice to and approval of GAMI, and would, upon GAMI's request, take any action authorized by the construc-

tion loan agreement or other loan documents.

The agreement was that GAMI would fund the first 95% of the loan before the Bank would fund the remaining 5%. While the loan was being funded the Bank, pursuant to the agreement, was to hold the loan documents for GAMI's benefit. After full funding the Bank was to hold the loan documents for the benefit of itself and GAMI without preference or priority, and without recourse on the Bank. Further the agreement provided that the Bank was to account for and pay to GAMI when received, GAMI's share of all collections determined according to GAMI's interest in the loan at the time of the collection.

GAMI agreed to bear losses up to its participation, with the Bank being liable only up to the funds it had advanced on its interest in the loan. After the loan had been fully funded, the agreement provided that losses were to be shared ratably according to the interest of each participant.

A GAMI loan officer, Thomas Roan, testified on behalf of GAMI concerning its agreement and relationship with the Bank. He testified to the effect that finding a local lender to act as a "lead lender" was a condition precedent to making the loan. He defined "lead lender" as a lending institution that actually closes the loan in its name and services the loan. GAMI needed a local lender because it did not have a permit to do business in Texas and because it wanted a lead lender with experience in local real estate customs and laws. In choosing the Bank, GAMI wanted the Bank to do all things necessary to set up the loan and actually put it in operation including making, processing, funding, and payment of money under the loan. Also the Bank was to obtain title letters and title binders, and to make sure no codes or similar restrictions were violated. The Bank was to act as any prudent lender would act in making the loan.

■ From the evidence outlined above we must determine what legal relationship GAMI had with the Bank. First we consider whether a joint adventure was estab-

lished. It is well settled that the establishment of a joint adventure requires (1) community of interest; (2) joint right of control; and (3) sharing of profits, losses, and costs or expenses. *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956). Because GAMI and the Bank were co-owners of the loan we find it clear that they had a community of interest in the loan. The fact that the Bank was to act as if it were the lender together with GAMI's right to approve the Bank's actions in our opinion establishes a joint right of control. The participation agreement expressly provides for the sharing of profits and losses. Thus we conclude that the evidence established as a matter of law that GAMI and the Bank were joint adventurers.

■ If we are in error in holding that as a matter of law there was a joint adventure relationship, there still would exist the question of whether there was an agency relationship between GAMI and the Bank. Agency has been defined in 2 Tex.Jur.2d *Agency* § 1, p. 436 (1959) as follows:

> "Agency is defined as the legal relation, founded on the express or implied contract of the parties or else created by law, by virtue of which one party, the agent, is authorized to act for the other party, who is the principal. More specifically, an agent is one who is authorized by another to transact business or manage some affair for him, and to render to him an accounting of such transaction."

As noted above, the participation agreement expressly provided that upon GAMI's request the Bank would act on its behalf. Further the conduct of the parties reveals that the Bank acted for GAMI in processing, closing, and managing the loan. Thus from this and other evidence in the record we conclude that as a matter of law the Bank was GAMI's agent.

By its first point of error GAMI contends that it is entitled to judgment on the verdict having established its negligent misrepresentation cause of action as a matter of law. Its position is that because the jury found that there was a misrepresentation in

the title binder; that the information in the binder was intended for GAMI's benefit and guidance; that it justifiably relied on the information in the binder without knowing of the restrictions; and that it was damaged as a result of its reliance; therefore, it is entitled to judgment as a matter of law.

The defendants contend that GAMI is not entitled to judgment because the jury found that the Bank knew of the deed restrictions before the closing of the loan. It is the defendant's position that since the evidence established that GAMI and the Bank were joint adventurers or agents as a matter of law, the trial court properly imputed the Bank's knowledge to GAMI. Thus the defendants conclude that the trial court properly rendered its judgment because with knowledge of the restrictions imputed, GAMI could not have justifiably relied on the misrepresentation that no restrictions existed, nor could it have been damaged by the misrepresentation.

The jury found that the Bank knew of the deed restrictions before the loan was closed. GAMI contends there is no evidence to support this finding. Our review of the record indicates that the evidence established that the Bank received the May 4th MIL which disclosed that there were deed restrictions recorded. Therefore, the Bank had actual notice of the restrictions and the jury's answer to this issue is supported by the evidence.

 Having concluded that GAMI and the Bank were joint adventurers and/or that the Bank was GAMI's agent, we recognize the well settled rule that the knowledge of one adventurer concerning the adventure is imputed to the other adventurers. *Heinrich v. Wharton County Livestock, Inc.*, 557 S.W.2d 830 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n. r. e.). Likewise the knowledge of an agent relating to information, acts and events within the scope of the agency is imputed to the principal. *Community S. and L. Ass'n of F. v. Lubbock S. and L. Ass'n of L.*, 509 S.W.2d 448 (Tex.Civ.App.—Amarillo 1974, writ dism'd). We conclude that as a matter of law the Bank's knowledge of the deed restrictions is imputed to GAMI and that it could not have justifiably relied on the misrepresentation, nor could it have been damaged thereby.

 GAMI complains that the trial court erred in that no special issue concerning agency was submitted to the jury, and further that the evidence did not establish agency as a matter of law. A review of GAMI's objection to the court's charge at the time of trial reveals that it waived any error regarding the failure of the court to submit such an issue because no objection was made concerning this point. However, even if GAMI had properly preserved the point for review, it is well settled that where as here the evidence has established a fact as a matter of law, no special issue concerning that fact should be submitted. 3 McDonald, Texas Civil Practice, § 12.08–c (1970). Therefore, the trial court did not err in failing to submit the issue of agency because it was established by the evidence as a matter of law. We overrule points of error numbers three and four.

GAMI's final points of error, numbers five, six, and seven, concern special issues numbers twenty-nine and thirty. They are as follows:

"Special Issue No. 29:

"Do you find from a preponderance of the evidence that Wynnewood State Bank, through its authorized officers and agents, knew of the restrictive covenants on the Ridglea Park land on or before the interim construction loan was closed?

"Answer 'We do' or 'We do not'.

"Answer: We do.

"Special Issue No. 30:

"Do you find from a preponderance of the evidence that Great American Mortgage Investors, through its authorized officers and agents, knew of the restrictive covenants on the Ridglea Park Land on or before the interim construction loan was closed?

"Answer 'We do' or 'We do not'.

"Answer. We do not."

GAMI complains the trial court erred in ignoring the jury's answer to special issue number thirty, and therefore erred in rendering judgment for the defendants. Having held that the trial court properly concluded that as a matter of law the Bank's knowledge of the restriction, as found by the jury in special issue number twenty-nine, is imputed to GAMI, it did not err in ignoring issue no. thirty. This point of error is overruled.

 GAMI further contends that the trial court erred in submitting issue twenty-nine for three reasons. First, it contends there is no evidence that any of the Bank's officers or agents had actual knowledge of the restrictions. Having already discussed that there is evidence supporting the jury's finding on this issue, this contention is overruled without further consideration. Second, GAMI complains that special issue number twenty-nine as worded inquires into an unlimited time in the past and is therefore error. This contention is without merit and is overruled.

 GAMI's third contention is that issue twenty-nine is an inferential rebuttal issue. GAMI contends that whether the Bank had knowledge of the restrictions before the loan was closed is merely a shade or an element of the issue on whether the Bank justifiably relied on the misrepresentation in the title binder. It thus concludes that the issue on knowledge is an inferential rebuttal issue. GAMI correctly states the general rule that inferential rebuttals are not to be submitted. Tex.R.Civ.P. 277.

A reason for the rule prohibiting the submission of inferential rebuttal issues was stated in *Select Ins. Co. v. Boucher*, 561 S.W.2d 474 (Tex.1978). It is that inferential rebuttals disprove a factual element relied upon by the opposing party by establishing the truth of a fact theory inconsistent with the fact relied upon. Additionally the prohibition against submission or inferential rebuttals is designed to avoid confusion and conflicting answers to the special issues submitted.

Applying the above to the facts of this case, we agree with GAMI that issue number twenty-nine is an inferential rebuttal issue and should not have been submitted. However, we must determine whether this error was calculated to cause and probably did cause the rendition of an improper verdict under Tex.R.Civ.P. 434. GAMI's position is that submission of the issue, assuming that the Bank was its agent, caused an irreconcilable conflict with other issues in the case, particularly issue number thirty.

On its face it appears that issue number twenty-nine, finding that the Bank knew of the restrictions, conflicts with issue number thirty, where the jury failed to find GAMI knew of the restrictions, if the Bank is considered as GAMI's agent. However, the trial court did not instruct the jury on the issue of agency. Thus the jury was never informed of the possibility that the Bank might be GAMI's agent or co-adventurer. There is no indication the jury considered the possibility that the knowledge of the Bank would be imputed to GAMI. The facts as found by the jury are obviously consistent. It found that the Bank knew of the restrictions and therefore failed to find that the Bank had justifiably relied on the misrepresentation or was damaged thereby. Also consistent are the findings that GAMI relied on the misrepresentation, that it was damaged thereby, and the failure to find that it knew of the restrictions.

From the above we conclude that there is no irreconcilable conflict or confusion presented by the trial court's submission of this case or the jury's answers to the issues. Where, as here, it is the application of the law that creates an apparent conflict rather than the method of submission, there is no basis for reversal. We hold that the error in submitting an inferential rebuttal is harmless. We further conclude that the correct result was reached by the trial court.

In view of our holdings it is not necessary to consider the numerous cross-points of error presented by the appellees. However, we have severally considered each cross-point of error and each is overruled. Like-

wise, even though every point of error may have not been individually discussed, each has been severally considered and overruled.

The judgment of the trial court is affirmed.

### OPINION ON MOTION FOR REHEARING

By its motion for rehearing GAMI has directed our attention to matters contained in a supplemental transcript. It consists of a question from the jury to the trial judge made during deliberation, and the trial judge's response. They are as follows:

"Judge Young

"Special Issue # 30

"We do not consider GAMI officers and agents to include those that are employed by Wynnewood since issue # 29 covers Wynnewoods officers and agents.

"Right?

"R B Brown

"LADIES AND GENTLEMEN OF THE JURY:

"Replying to the attached note, you will consider Special Issues 29 and 30 separately and independent of each other.

"Please retain your note and this reply.

"Ardell M. Young

"Judge presiding"

In view of the above it appears that the statements in our original opinion that there was no indication that the jury was informed of the possibility or considered the possibility that the Bank might be GAMI's agent or co-adventurer are incorrect. However, we conclude that this will not affect the result in this case.

■ There was no objection to the trial court's instruction. Therefore error therein, if any, is waived. GAMI claims that we have erred in concluding that the trial court's submission of the issue of knowledge of the restrictions in special issues nos. 29 and 30 was harmless error. Obviously, because the Bank's knowledge was imputed to GAMI as a matter of law, the issue is adverse to GAMI. However, this is not the test for harmless error under Rule 434.

The test is whether the error was calculated to cause and probably caused the rendition of an improper verdict. We are still of the opinion that the verdict and the judgment rendered in this case are proper.

The motion for rehearing is overruled.