Edward A. SHELDON, Appellant,

v.

JASPER INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 09–88–258–CV.

Court of Appeals of Texas, Beaumont.

March 30, 1989.

Rehearing Overruled April 20, 1989.

Glenn H. Steel, Michael A. Havard, Nederland, for appellant.

Carey Williamson, Tyler, Brian E. Brown, Austin, for appellee.

## OPINION

BURGESS, Justice.

This is an ad valorem tax case in which the taxpayer brought suit for a refund of penalties, interest and collection fees paid in connection with delinquent taxes. Trial was before the court which made findings of fact and conclusions of law and entered judgment in favor of the school district. ▮ Appellant sought the refund under *TEX.TAX CODE ANN. sec. 33.011* (Vernon Supp.1989) claiming the Jasper County Appraisal District had failed to notify the school district of appellant's correct address, and thus, the school district had mailed the delinquent tax notice to an incorrect address. Appellant applied to the school board for a refund, and it declined to waive the penalties, interest and collection fees. We need not reach any of appellant's complaints because of the long-standing rule in Texas that a voluntary payment of a tax, even an illegal one, will not support a claim for repayment. *State v. Connecticut Gen. Life Ins. Co.,* 382 S.W.2d 745, 746 (Tex.1964). An exception to the rule exists when the payment is the result of either express or implied duress. *Id.* This exception was neither pleaded nor proved by appellant. The voluntary payment rule has been held to apply not only to the payment of taxes, but to the payment of penalties and attorney's fees also. *Salvaggio v. Houston Indep. School Dist.,* 752 S.W.2d 189, 193 (Tex.App.—Houston [14th Dist.] 1988, writ denied). The trial court found and it was admitted by appellant that appellant had paid the amounts in controversy. Thus, we are required to affirm the judgment.

AFFIRMED.

BROOKSHIRE, Justice, dissenting.

This appeal arises from litigation initiated by Edward A. Sheldon seeking a refund of certain penalties, interest and collection costs relevant to the 1984 ad valorem real property taxes. In the month of July, 1984, the Appellant Sheldon, bought Lot 8, Block 4, in Section 5 of Rayburn Country in Jasper County (Rayburn property hereafter).

Sheldon's agent notified the Jasper County Appraisal District that all tax notices were to be mailed to Sheldon's permanent residence which was located at that time in Beaumont. However, the Jasper County Appraisal District failed to notify the School District of Sheldon's correct address and the School District tax notice was mailed to the wrong address. Consequently, the taxpayer did not receive a notice or bill for 1984 taxes. Somewhat later a letter was directed to him. The letter was dated April 20, 1987. It was from an attor-

ney demanding delinquent taxes, penalties, interest and collection costs.

Acting in good faith, Sheldon paid the entire balance only seven days later on April 27, 1987. Sheldon paid the unpaid taxes plus $827.59 in penalties, interest and collection costs. The Appellant correctly requested and petitioned for a waiver and a refund of the penalties and interest from the School District. The School District denied the request. A letter from the tax collecting attorney was on a printed form and the penalties and interest were lumped together. The printed form letter set out a collection cost of $288.31.

On June 22, 1987, the Jasper County Appraisal District wrote a letter to a Mr. Scot E. Sheldon, an attorney for the Appellant. That letter referred to the payment of interest and penalties that had been paid to the School District. That letter conceded that a governing body of a taxing agency may waive penalties and interest provided that an act or omission of an officer, employee, or agent of the taxing unit, brought about the taxpayer's failure to pay the tax before delinquency. I submit that is the case before us. In the letter of June 22, 1987, dictated and signed by the Chief Appraiser, there is an admission to the effect that "the key here is that we made the mistake...." The Chief Appraiser took the position that he was not an agent of the Jasper Independent School District. I disagree. Moreover, I think that a formal agency relationship is not required under this record.

A prominent member of the Jasper Independent School Board had expressed an opinion to the Chief Appraiser that the Appellant's complaint and request for refund had merit. Writing further, the Chief Appraiser, the Honorable David W. Luther, RPA, RTA, wrote in the letter of June 22, 1987, this:

"Please understand, that if I could have directly helped Dr. Sheldon, I would have. I will appear with you, at the Jasper ISD school board meeting, if you wish. I have no problem with the school board waiving penalties and interest provided it be understood and be a part of

the motion that the school district tax assessor-collector was not at fault, and the appraisal district was the one that erred on the address question."

By letter dated June 24, 1987, the Honorable Gary H. Gatlin, a member of the Jasper Independent School District board, wrote a letter to Mr. Arthur Kees, Superintendent of the School District, in reference to the 1984 taxes on the Rayburn property owned by the Appellant. That letter to Superintendent Kees referred to copies of four other previously written letters. Mr. Gatlin then wrote:

"The summation of all of the letters, I feel, is that Mr. Sam Job, a person acting on behalf of Dr. Sheldon, went to the Jasper County Appraisal District Office and informed the Appraisal District of Dr. Sheldon's current mailing address. The Appraisal District made the correction on their records, and informed Jasper County of the change; however, did not inform the Jasper Independent School District Tax Assessor of the correct mailing address. Accordingly, Dr. Sheldon did not receive his 1984 tax statement and penalty and interest accrued. Dr. Sheldon has paid the 1984 taxes, plus penalty and interest and is now requesting a refund of the penalty and interest, in that the incurring of same was not his fault. I believe that this position is supported by Mr. Luther in his letter of June 22, 1987, and the 'note' at the bottom of David's letter."

The note referred to reads as follows:

"Note: The mistake that we [the Jasper County Appraisal District] made that I refer to in the letter is the fact that we apparently failed to notify the school tax assessor-collector of the address correction while we corrected our records."

Upon receipt of the collection letter the taxpayer immediately went to Jasper and sought out the tax assessor-collector for the School District. The Appellant asked the collector where the notices for the taxes had been sent. The Appellant was then advised that it was sent to an address in Beaumont at which he had resided at least a year or two prior to the purchase of the

Rayburn property. There followed a fairly spirited exchange and colloquy between the taxpayer and the tax collector for the school district or his assistant. Among other statements according to Dr. Sheldon, he was advised that it did not make any difference if his tax notice was sent to Nome, Alaska, because it was Dr. Sheldon's duty to find out why he had not paid his tax or received the notice and then come down and pay the taxes. The Appellant then went to the Appraisal District in the same courthouse. The Appraisal District located the relevant records and displayed them. The Appraisal District had recorded his correct address and it was stated that the correct address had been sent also to the Jasper Independent School District office. Further, it was stated that the Appraisal District had done all that it was required to do.

The Appellant swore that at the School District office he had talked to a Mr. Calvin Oates. The Appellant testified to this:

"Q   Was it Mr. Oates at the School District office that you talked to?

"A   Mr. Calvin Oates, yes.

"Q   And he told you that you had to pay the penalties and interest regardless of any kind of errors that were made in how the tax statements were sent out?

"A   Exactly."

After the above exchange and experience, the Appellant testified that three years or so expired before he received the demand letter for the penalties, interest and collection fees. The intervening years were 1985, 1986 and 1987. The Appellant testified further that in 1986 he had not received a tax statement from either the County or the School District by November of that year. The Appellant was the only live witness before the trial court. The Appellant testified that he came down to the tax assessor-collector's office and asked why he had not received his 1986 tax statements. He stated that he was told not to worry about it because they were late in getting out the tax statements but that, nevertheless, the tax statements probably had been mailed about three weeks earlier. The Appellant testified that he thought three weeks might be a little long to receive a letter in what is known as Rayburn Country in Jasper County by mail from the City of Jasper, itself. Then the Appellant asked if the records could be checked to see where the tax statements had been sent for the 1986 taxes. He was told, he swore, that the personnel in the tax assessor-collector's office looked under Appellant's name and then stated that they did not have anybody by that name listed on the tax records of Jasper County or of the School District. The Appellant said he was quite taken aback. The Appellant's statement was that he had previously sold another home in Rayburn Country in 1978 and when this sale had been recorded to the new owners, the taxing authorities took the Appellant off the tax rolls altogether. He then asked that he be placed back on the tax rolls as to his then current holdings. In 1986 when he checked again with the Appraisal District, the Appellant said that his records were pulled out and examined but at that time in 1986 the authorities said nothing to him about *any delinquent taxes whatsoever*.

Appellant did not receive any type or sort of delinquent tax notices from the School District or any other agency. Indeed, the first notification of delinquent taxes came from the Honorable Carey Williamson, attorney at law of Tyler, Texas, who acted as a delinquent tax attorney for the Jasper Independent School District. Sheldon testified that the 1985 tax statement and 1987 tax statement to him showed nothing to indicate *that there were any delinquent taxes owed on the Rayburn property whatsoever*. The 1986 taxes were not set forth at all—certainly not as delinquent.

The concluding paragraph of the letter from the Honorable Gary H. Gatlin was read into the evidence in the trial on the merits before the district judge. That concluding paragraph read as follows:

"As I stated to you, I will not be at the July 13, 1987, board meeting, in that I will be out of town, however, have requested that same be placed on the agenda to consider a refund to Dr. Sheldon. Would you please make it known to the

Board that my vote would be for a refund, if I were present to make my vote. I think that clearly the Jasper County Appraisal District Office is an 'agent' that we rely on to furnish us with updated information on taxpayers, and that there is not a necessity that there be a contractual relationship in order for the Appraisal District to be an agent of the School District."

Again the Appellant, Dr. Sheldon, was the only live witness. There were some interrogatories and the answers thereto put in the record as evidence. Some of the photostatic copies of the tax collector's record are very difficult to read but it reasonably and fairly appears that by 1985 that the taxing authority involved had the correct address for Appellant Edward Sheldon. But he received no notification of a delinquent tax assessed for 1984 taxes in 1985 or 1986.

The documents show that the tax assessor-collector for Jasper County had the correct address of the Appellant in 1984. There is another documentary record that is fairly clear that shows that on the 1986 tax roll the Independent School District had the correct address for Appellant. But his uncontroverted testimony was that he did not receive any notice for delinquent taxes for 1984 during the year of 1986.

I think it should be stressed that when the taxpayer rested his case in chief that the tax collecting attorney for the District rested immediately also. No witness was proffered by the collection attorney. I find in the record:

"MR. STEELE: [Attorney for the taxpayer] Plaintiff rests at this time.

"MR. WILLIAMSON: The defendant *has no evidence to present* to the Court at this time." (Emphasis supplied.)

The Legislature of Texas has enacted a property tax code which created appraisal districts for each county in our State. *Dallas County Appraisal District v. Lal,* 701 S.W.2d 44 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Generally, the appraisal district has the duty and responsibility of appraising property within the district for ad valorem tax purposes for each taxing unit

or taxing entity that imposes such ad valorem taxes. *TEX.TAX CODE ANN. sec. 6.01(b)* (Vernon 1982). A correct definition of the term agency has been set out as follows:

"Agency is defined as the legal relation, founded on the express or implied contract of the parties or created by operation of law by virtue of which one party, the agent, is authorized to act for the other party, who is the principal. More specifically, an agent is one who is authorized by another to transact business or manage some affair for him, and to render to him an accounting of such transaction."

See 3 TEX.JUR.3d, *Agency,* Sec. 1 (1980). In my opinion there was at the least an implied contract or understanding between the Appraisal District and the School District. The arrangement was an implied contract of agency. Furthermore, there was an agency relationship created by law by virtue of the course of dealings between the Appraisal District and the School District. From the record it is clear that the Appraisal District acted for the School District in forwarding the correct current addresses for the taxpayers. The School District acquiesed. And under this record the Appraisal District was authorized to perform this function and the School District tacitly agreed to and followed this practice. The School District, under this record, authorized and permitted, at least by custom, practice, and acquiescence, the Appraisal District to manage the forwarding to the School District of the correct, current mailing addresses of the land-owning taxpayers. Under this record there is brought into play the generally recognized rule that the knowledge of the agent relating to certain information, acts and events within the scope of the agency is definitely visited upon or imputed to the principal. See *Great American Mortgage Investors v. Louisville Title Ins. Co.,* 597 S.W.2d 425, 432 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

Moreover, the Attorney General of Texas has issued an opinion on this question. The Opinion concluded that an Appraisal

District is an agent of a taxing unit within the meaning of *TEX.TAX CODE ANN. sec. 33.011,* Op.Tex.Att'y Gen. No. JM–919 (1988). The Attorney General Opinion states in relevant, compelling part:

> "In our opinion, however, a central appraisal district, within the meaning of section 33.011, acts as the agent of the taxing units for which it makes appraisals."

In another relevant and cogent part of the Opinion I find:

> "There are, of course, situations where the ordinary definition and consequences of agency do not apply. Not all agencies are created by contract; some arise by operation of law. The administrator of a decedent's estate, for example, has been termed a 'statutory agent.' See *Roberts v. Kenna,* 241 S.W.2d 680, 685 (Tex.Civ. App.—Beaumont 1951, no writ). Agencies can be created by estoppel. See 3 Tex.Jur.3d, Agency § 47, at 77."

Reading further from the Opinion:

> "An agent for a public body is no less an agent because the duties of the agent are established by statutory law rather than by contract at common law."

Additionally, we find:

> "Alternative concepts of 'agency' need not be exhaustively explored. Here, we need only demonstrate that a legislature could reasonably have intended to use the word 'agent' in a broader legal sense. The purpose of the legislative provision is clear and its use of 'agent' in the suggested restrictive sense would lead to incongruous results."

It is glaringly clear under this record that the Jasper County Appraisal District, by its own admissions, created the error.

Quoting further from the Attorney General's Opinion:

> "The legislature clearly intended that errors caused by some appraisal personnel resulting in delinquency penalties would allow waiver under the statute.
>
> . . . .
>
> "The legislature, then, was not only aware that penalties resulting from delinquencies caused by the errors of some appraisers—those employed by taxing units at the time section 33.011 became law—would be waivable; . . . ."

The Opinion also states in substance that when taxes become delinquent as a result of errors committed by authorities that are charged with tax administration, then unjust results may be visited upon the taxpayer. Furthermore, the Attorney General opined that it is the duty of the courts to give effect to the legislature purpose, the purpose being to allow relief to taxpayers from harsh and unjustified penalties.

I respectfully submit that at least the penalties should have been remitted as well as at least part of the collection fees. It is true that certain tax monies were detained from the Independent School District. This detention of money could be fully compensated by the payment of the interest. I think right dealing, fairness, justice and equity would require that at least the penalties involved be remitted to the taxpayer. This is especially equitable since it is evident under this record that the School District relies to some practical extent upon the Appraisal District to furnish to it updated information on taxpayers, including their correct addresses. Hence, an agency relationship exists at least to that extent.

Moreover, I think it is clear, from the Texas Property Tax Code, that, at least once each year, the collector for the taxing unit shall deliver a notice of delinquency and it is glaringly clear, under the Tax Code, that the tax collector for each taxing unit, for each year divisible by the figure 5, shall deliver a written notice of delinquency to each person who owes a tax. The collector is also to exercise reasonable diligence in obtaining the mailing addresses of such persons. Certainly, the calendar year of 1985 is divisible by 5 and it seems to me that, with reasonable diligence, the relevant tax collector here could have reasonably ascertained the correct mailing address of the taxpayer because the Jasper County Central Appraisal District had it, as well as Jasper County, itself. In that notice, the tax collector shall state the amount of delinquent tax, penalties and interest due. It is certainly interesting to note that penalties and interest on delin-

quent taxes after years divisible by 5 are canceled and may not be collected if the collector has not delivered the notice required in each year that is divisible by 5.

It is also interesting and important to note that, in the 69th Legislature Regular Session, the evident intent of the Texas Legislature, concerning interest and penalties, was that the governing body of a taxing unit may provide for the waiver of penalties and interest on delinquent taxes if an act or omission of an officer, agent or employee of the taxing unit causes any taxpayer's failure to pay the tax before delinquency, and if the tax is paid within 20 days after the taxpayer knows, or should have known, of the delinquency. Chapter 769, House Bill 2434, Sec. 1, at page 2624, of the General and Special Laws of Texas, 2d Vol., 69th Leg.Reg.Sess. Moreover, Sec. 2 provided for an emergency and the measure was passed by the House on May 17, 1985, by 134 yeas and no nays, one member present not voting, and passed by the Senate yeas 31, nays nothing, and was made effective immediately.

In view of the Texas Property Tax Code, I must respectfully dissent.

The learned and able trial judge found, as a fact, that Edward A. Sheldon did not receive a school tax statement for 1984 taxes on Lot 8, Block 4, Section 5, Rayburn Country, Jasper County, Texas; finding further, as a fact, that the tax notice on the 1984 taxes was not sent to Sheldon's correct address because the Jasper County Appraisal District Office had not provided the School Tax Office with the proper, correct address.

A further finding of fact was that the effective date of *TEX.TAX CODE ANN. Sec. 33.011* (Vernon Supp.1989) was June 14, 1985. I note that *TEX.TAX CODE ANN. Sec. 33.04* (Vernon Supp.1989), entitled "Notice of Delinquency", was effective August 26, 1985. *Section 33.04* places the duty on the collector of a taxing unit to deliver a notice of delinquency to each person whose name appears on the current delinquent tax roll and, under this record, I conclude that the collector, by exercising reasonable diligence, could easily have de-

termined the taxpayer's name and correct address. The County of Jasper had it. The Jasper County Central Appraisal District had it. But, more importantly, *TEX.TAX CODE ANN. Sec. 33.04(b)* (Vernon Supp.1989), provides, generally, that, in addition to the yearly notice, the tax collector of each taxing unit, in each year divisible by five, shall deliver a written notice of delinquency to each person who owes a tax and that he shall state the amount of the delinquent tax, penalties and interest due. This was simply not done by the Independent School District Tax Collector. *TEX.TAX CODE ANN. 33.04(c)* (Vernon Supp.1989), specifically provides that penalties and interest on a delinquent tax more than five years, or a multiple of five years, are cancelled and may not be collected if the collector has not delivered the notice required by *Subsection (b) of Section 33.04* in each year that is divisible by five.

Because of the clear provisions of the *TEXAS TAX CODE ANNOTATED*, I must respectfully disagree with the Conclusions of Law filed by the District Judge. In no place, in the Findings of Fact or in the Conclusions of Law, is *TEX.TAX CODE ANN. Sec. 33.04* mentioned, which, in my opinion, has paramount importance in this matter and is an additional reason for my inability to agree with the Conclusions of Law, filed below. Hence, this dissent is respectfully registered.