ARTHUR E. KING, INDIVIDUALLY AND D/B/A KING FLOOR COMPANY, V. J. D. McGUFF ET UX.

No. A-2733. Decided November 15, 1950.
Rehearing overruled December 20, 1950.
(234 S. W., 2d Series, 403.)

*Bracewell & Tunks,* and *Bert H. Tunks,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the gross negligence of petitioner's employees was imputable to petitioner as a matter of law, to the extent that it made petitioner liable for exemplary damages. Lusk v. Onstott, 178 S. W. 2d 549; Baker Hotel of Dallas v. Rogers, 157 S. W. 2d 940, writ of error refused for want of merit.

*Price, Guinn & Wheat, John Wheat* and *Chilton Bryan,* all of Houston, for respondents.

The holding of the Court of Civil Appeals was correct in holding that the negligence of petitioner's employees was imputed to the petitioner as a matter of law to the extent that it rendered petitioner liable for exemplary damages. Morton Salt Co. v. Wells, 123 Texas 151, 70 S. W. 2d 409; Chronister Lumber Co.. 116 Texas 207, 288 S. W. 402; 13 Tex. Jur. 250.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The Court of Civil Appeals has affirmed a judgment in favor of respondents, Mr. and Mrs. McGuff, as plaintiffs, for sundry items of damages, including exemplary damages, based on jury findings of ordinary and gross negligence of the servants of petitioner, King, the defendant below. 229 S. W. 2d 188. The factual ground of respondents' suit was that petitioner contracted with respondents to clean the floor of their kitchen, and that his employees used gasoline for the purpose without first turning off the pilot light of a water heater in the same room, resulting in an explosion which damaged respondents' house so as to reduce its value by about nine tenths.

The verdict that the conduct of petitioner's servants amounted to gross negligence is not questioned, but we granted the writ of error to review the holding of both courts below, that petitioner, who was not personally present or otherwise in immediate direction of the work when the misconduct occurred, was yet on the evidence responsible in exemplary damages therefor without need of any jury finding of previous authorization or subsequent ratification thereof on petitioner's part. Aside from the obvious fact that the servants were at the time performing the task of cleaning the floor, which petitioner had delegated to them, the only evidence connecting petitioner personally with their carelessness was his own testimony to the effect that, in common with others engaged in the same line of business, he customarily permitted the use of inflammable types of cleaning fluid on floors, and consciously omitted instructing his employees always to shut off water heaters and automatic refrigerators when the cleaning was done in a room other than that in which such apparatus were located.

■ While the bulk of our decisions on this subject of the master's liability in exemplary damages for the gross negligence of the servant are those involving corporate masters and large enterprises, and indeed the only authority cited below, Chronister Lumber Co. v. Williams, 116 Texas 207, 288 S. W. 402, opinion adopted by this court, is just such a case, the general rule prevailing in Texas may, for the purposes of this suit, be stated the same as in the Restatement, Torts, sec. 909, as follows:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the employer or a manager of the employer ratified or approved the act."

See Ft. Worth Elevators Co. v. Russell, 123 Texas 128, 70 S. W. 2d 397; Morton Salt Co. v. Wells, 123 Texas 151, 70 S. W. 2d 409, Southwestern Gas & Electric Co. v. Stanley, 123 Texas 157, 70 S. W. 413. Our decisions on the analogous subject of charging a master or principal with exemplary damages for the malicious misconduct of a servant or agent involve both individual and corporate defendants and follow the same general principles applied in cases of gross negligence. See Commonwealth of Massachusetts v. Davis, 140 Texas 398, 168 S. W. 2d 216, and cases cited at p. 225 of the latter report.

There is clearly nothing in the foregoing, including the Chronister Lumber Co. case, to warrant making a public example of an individual or corporate employer simply because the callous misconduct of his or its servants occurred, in a general sense, within the scope of their employment. There is nothing in the present record to indicate that the employees were other than mere servants or that petitioner was reckless in employing them. So the only justification, if any, for punishing the petitioner here must lie in his brief admission above referred to concerning the method of his operations.

■ Assuming, without deciding, that this latter evidence was enough to raise a fact issue of previous authorization of "the doing and the manner of the act" (it could hardly be ratification or adoption) it did not conclusively establish such authorization as a matter of law. It is clearly not an admission that the established practice of the petitioner was to leave the pilot lights of water heaters burning while using gasoline on the floors of the very room in which the heaters were located and while leaving open vessels of the inflammable fluid nearby with the windows closed, all of which appears to have been done by petitioner's servants. The Chronister Lumber Co. decision, which involved the matter of imputing to a lumber manufacturing corporation the gross negligence of a kind of superintendent called a "woods foreman", did not deal with the effect of testimony such as that of petitioner here, and while the philosophy of the opinion in that case is somewhat less than clear, we do not, as

already stated, consider it authority that the master is punishable for the gross neglect of a mere servant, whenever the offense of the latter be committed during the general scope of his employment. The responsibility of petitioner for exemplary damages was not established without a jury finding on the issue of authorization, and, the point being preserved by proper objection to the charge, both courts below erred in holding otherwise.

■ Petitioner also attacks the judgment below because it allowed, pursuant to appropriate fact findings, $345.00 as compensation for loss of use or rental value of respondents' house during the time it was being restored, while at the same time allowing recovery for $6250.00, as the difference between the reasonable cash market value of the house (exclusive of the land) just before the fire ($7000.00) and just after ($750.00). The measure applied in reaching the item of $6250.00 is not questioned and may well be proper in view of Missouri K. & T. Ry. Co. of Texas v. Mitchell, Tex. Civ. App., 166 S. W. 126, er. ref., notwithstanding a somewhat different statement in Pacific Express Company v. Lasker Real Estate Association, 81 Texas 81, 16 S. W. 892 and Pacific Express Company v. Smith (Tex.) 16 S. W. 998. On the question presented by the $345.00 item, while authority both in this state and elsewhere seems surprisingly meagre, the three decisions last mentioned (all of which involved tortious damage to buildings by fire) state the rule as including an allowance of interest on the lost market value from date of loss to date of trial. A close reading of Coffman v. Gulf C. S. & F. Ry. Co., Tex. Com. App. 23 S. W. 2d 304, discloses that the same practice was there followed. While in none of these decisions does it appear to have been contended that interest should not be allowed in situations in which the injury amounted to complete, as distinguished from partial, destruction of the buildings in question, the facts in one or more of them involved total destruction, and there is no suggestion in any of the opinions that the allowance is improper under such circumstances. In the earlier case of Galveston, Harrisburg & San Antonio Ry. Co. v. Ware, 67 Texas 635, 4 S. W. 13, involving damage amounting to less than destruction of the plaintiff's house from a temporary overflow caused by the defendant, the author of the opinions in the Pacific Express Company decisions, supra, speaks of "reasonable compensation for any interruption of its use", during the course of repairs, but this language is not necessarily inconsistent with the express reference to "interest" in the later opinions. In some other jurisdictions interest seems to be allowed in cases of complete destruction of buildings by fire. Davenport v. Intermountain Ry.

Light & Power Co., 108 Neb. 387, 187 N. W. 905, 907. "Damages for detention" are briefly stated to be included in a case of destruction of a house by the wrongful act of the adjoining owner in undermining a wall thereof. Durante v. Alba, 266 Pa. 444, 109 Atl. 796, 798.

Unless it be Lone Star Gas Co. v. Hutton, Tex. Com. App., 58 S. W. 2d 19, hereinafter discussed, we know of no decision clearly supporting the thesis that separate compensation for loss of use of a house or building tortiously destroyed in its entirety is not permitted, while the above-mentioned Texas decisions appear to award interest whether the destruction be total or partial. Doubtless the instant situation is one of total destruction, but it seems difficult to say that loss of use may not be compensated when the damage amounts to nine tenths of the value of the house, but will be, if it amounts to, say five tenths or six tenths.

Petitioner relies heavily on Lone Star Gas Co. v. Hutton, supra, which was a suit for "permanent injury" to land by overflow caused in 1928 by the act of the defendant in constructing a pipeline on the premises. It was held that the plaintiff could not recover an amount for "permanent injury" fixed as of the date of the overflow in 1928 and at the same time recover additional sums for loss of crops or lost rental value to accrue in 1929 and thereafter, the latter item being necessarily included as part of the award for permanent injury". In that case apparently no question was raised as to the allowance of interest on the amount of decrease in value of the premises from the date of the wrong to date of trial, and while there may be a distinction in this connection between farm land, which is valuable only for its periodical crops, and a house which is valuable for its daily use, the decision, in any event, clearly does not purport to differ with the statements in our above-mentioned earlier decisions regarding allowance of interest.

The contested item in the instant case was not, of course, one of interest but lost rental value, for which latter there seems to be no precedent in the state, under the circumstances here involved, despite the general reference to "compensation" in Galveston, Harrisburg & San Antonio Ry. Co. v. Ware, supra. Quite possibly the rule allowing interest intends to treat the latter as a substitute for loss of use pending the trial, through one can imagine cases in which it would seem inadequate. The difference between interest and rental value is not as great as it seems, because damages for lost use should in justice be de-

fined to include a charge against the plaintiff of the equivalent of depreciation during the same period. Influenced considerably by the early Texas decisions previously referred to, we conclude that respondents are entitled to interest at the legal rate on the award $6250.00 from the date of the fire to the date of judgment of the trial court, and that such interest should have been allowed instead of damages for lost use based on rental value.

■ It is also contended by petitioner that the jury should have been permitted to say whether the pilot light of the water heater was actually left burning while the floor cleaning work was going on, instead of being instructed in effect that it was so left. While the question is a close one, we have concluded that the evidence was such as to justify the action complained of, and that neither this point nor the others presented by petitioner involve reversible error, save as heretofore observed.

As to the judgment to be rendered by this court, respondents' counsel on oral argument requested in effect that, as to any one or more of the various items of damage which we might consider to have been erroneously awarded below, we should simply delete such items of recovery and affirm the judgment as to the items properly allowed, rather than remand the case for re-trial on all issues. With regard to the above-mentioned error of the trial court in failing to submit the issue of authorization in connection with the matter of exemplary damages, we will accordingly reform the judgment of the trial court so as to deny exemplary damages altogether. As regards the remaining error —awarding $345.000, or six months rental value, to respondents as compensation for lost use of the house, instead of awarding interest—it appears that interest at the legal rate on $6250.00, (the difference in market value of the house before and after the fire) for the period between the fire and the trial would amount to slightly more than $345.00, of which latter award respondents have made no complaint on appeal. We find it proper, therefore, simply to affirm the smaller award.

The judgment of the Court of Civil Appeals, which affirmed that of the trial court, is reversed. The judgment of the trial court is reformed, so as to deny respondents recovery for exemplary damages, and as so reformed is affirmed. Costs in this Court and the Court of Civil Appeals are taxed against the respondents.

Opinion delivered November 15, 1950.

Rehearing overruled December 20, 1950.