SECURITY FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,

v.

Frances L. DeWITT, Appellee.

No. 8599.

Court of Civil Appeals of Texas, Amarillo.

April 19, 1976.

Rehearing Denied May 10, 1976.

Clayton & Stubblefield, Cleo G. Clayton, Jr., Amarillo, for appellant.

Edwards, Smith & Associates, Thomas S. Hoekstra, Amarillo, for appellee.

ROBINSON, Justice.

This is a suit to recover the value of personal property owned by plaintiff Frances L. DeWitt and allegedly converted by the defendant, Security Federal Savings & Loan Association, when it removed Mrs. DeWitt's property from a house on which it was foreclosing. Trial was to a jury which returned a verdict in favor of Mrs. DeWitt and against Security Federal in the amount of $1,500 actual damages and $1,000 exemplary damages. Defendant, Security Federal, appeals from a judgment on the verdict. Judgment is modified to eliminate exemplary damages and, as modified, affirmed.

The jury in response to correspondingly numbered special issues found that Security Federal, (1) acting through its agents or employees, converted property of Mrs. DeWitt (2) of the value of $1,500 and (3) that the conduct of Security Federal, its agents or employees, in converting the

property constituted malice, fraud or gross negligence. It (4) awarded exemplary damages in the amount of $1,000.

The evidence, except for that pertaining to the nature of the property removed from the house, is largely undisputed.

Mrs. DeWitt received a notice that Security Federal intended to foreclose the mortgage on the residence located on Barbara Lane in Amarillo in which she was living. The house in question was awarded to her former husband in their divorce. Shortly afterward, Mrs. DeWitt moved to a house on Parker Street and assumed a loan financed through Security Federal on that house. She did not remove all of her belongings from the Barbara Lane house, but continued the process of moving as she had time. She notified Security Federal that she would be out of the Barbara Lane house in about two weeks. She was told that this was satisfactory and was asked to leave the key in the night depository when she had completed moving. Within the two week period, she discovered that all of her property had been removed from the house. She called Security Federal and talked to Lewis Knapp, who was then a collection man with Security Federal. Knapp told her that he had had the house cleaned out because Security Federal had to give the house back to F.H.A.

Security Federal had mailed a second notice of foreclosure in the form of a letter to Mrs. DeWitt at the Barbara Lane address. That letter had been returned to Security Federal. Her Parker Street address had been written on the face of the envelope, but the notice was not remailed to that new address. Security Federal had Mrs. DeWitt's telephone number which was the same on Parker Street as it had been on Barbara Lane. It also had her business address and telephone number. Knapp testified that Security Federal made no effort after return of the letter to contact Mrs. DeWitt about the impending foreclosure, and that he saw no reason to write her at the other addresses.

Knapp testified that he went into the house and inspected it and its contents before having it cleaned. He reported to his "superior." The name, title, or authority of the superior does not appear in the record, nor does the content of Knapp's report. The superior instructed him "to get rid of the trash." Knapp then sent a janitor, who cleaned houses for Security Federal, to clean out the Barbara Lane house. No effort was made to keep the property removed from the house so that Mrs. DeWitt could reclaim it, but everything including family pictures, was thrown away or given to Goodwill Industries. The janitor testified that there was so much trash in the house that he couldn't haul it away with his truck, and he hired the driver from Goodwill to help haul the trash to the city dump. Goodwill was paid for this service with a check from Security Federal.

Although the evidence concerning whether the house was locked is in conflict, there is evidence from which the jury could reasonably infer that Mrs. DeWitt's belongings were still in the house when Security Federal's employees cleaned it out. The janitor testified that when he was first in the house, he noticed some movie film on the floor. He left the house to find somebody to help clean it out. He was gone about three hours. Mrs. DeWitt's testimony shows that she was in the house after the janitor left and before his return. There is no indication that anything was missing then. She said that she collected a few clothes from the closet and she took the movie film. When the janitor returned with the driver from Goodwill, he noticed that the movie film was gone. He noticed nothing else missing or disturbed.

A list of the items which Mrs. DeWitt contends were in the house together with her estimate of the replacement cost of each item was admitted in evidence. Mrs. DeWitt, Knapp, the janitor, and the driver from Goodwill, all offered testimony concerning what items were in the house and their condition.

■ After viewing the evidence in the light most favorable to jury answers, we overrule defendant's contention that there was no evidence to support the jury's find-

ings to Special Issues Numbers 1 and 3. After considering all of the evidence, we overrule defendant's contention that the evidence was factually insufficient to support the jury's findings in Special Issues Numbers 1 and 3, and we further find that those answers were not against the great weight and preponderance of the evidence so as to be manifestly unjust. Defendant did not brief or argue its point of error asserting that the evidence is factually insufficient to support the jury answer to Special Issue No. 2. The point therefore is waived. *Phagan v. State,* 510 S.W.2d 655, 659 (Tex.Civ. App.—Fort Worth 1974, writ ref'd n. r. e.). However, in considering all of the evidence, we find that the evidence is factually sufficient to support the jury answer to Issue No. 2.

Security Federal next contends that issues 1 and 3 improperly include references to agency and authority, without submitting the agency issue to the jury separately, and without properly limiting the scope of authority. Citing *Neeley v. Southwestern Investment Company,* 430 S.W.2d 465 (Tex. 1968), Security Federal says that the issue of agency must be submitted separately to the jury. It contends that the submitted issues are global issues in a form condemned by the Supreme Court of Texas, in *Roosth & Genecov Production Co. v. White,* 152 Tex. 619, 262 S.W.2d 99 (1953).

■ Since the *Neeley* and *Roosth* cases were written, Rule 277, Texas Rules of Civil Procedure (Supp.1976), has been amended to permit the trial court, at its discretion, to submit broad issues to the jury. An issue is not now objectionable because it is general or includes a combination of elements of issues. The amended Rule 277 has been liberally construed to mean that issues need no longer be submitted distinctly and separately, and generality or multifariousness, without more, is not objectionable. *Members Mutual Insurance Co. v. Muckelroy,* 523 S.W.2d 77 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.); *Shasteen v. Mid-Continent Refrigerator Co.,* 517 S.W.2d 437 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.).

In *Ka-Hugh Enterprises, Inc. v. Fort Worth Pipe & Supply Company,* 524 S.W.2d 418 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.), a special issue in a form similar to those complained of here was presented for review. The issue inquired whether the plaintiff, "acting by and through its agent, employees and representatives" accepted the terms and conditions shown on the defendant's invoices and delivery tickets. Objections made to that special issue were similar to those made to the issues before us, and included allegations that it was multifarious, unfair and confusing; did not name the agent involved; involved a question of law; and did not inquire into authority or scope of authority. The court in *Ka-Hugh* overruled all of the objections, citing Rule 277 as authorization for the trial court to submit the issue as it did.

■ We overrule the points of error insofar as Security Federal asserts that the issues Nos. 1 and 3 are objectionable because the questions of agency and course of employment were not submitted separately.

■ However, Security Federal correctly contends that the charge wholly fails to submit the question of the agent's authority to bind the corporation in exemplary damages.

The Texas rule on liability of the principal or master for exemplary or punitive damages was adopted from the Restatement of Torts § 909 in *King v. McGuff,* 149 Tex. 432, 234 S.W.2d 403 (1950) and reiterated by the Supreme Court in *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967), as follows:

> [t]he rule in Texas is that a principal or master is liable for exemplary or punitive damages because of the acts of his agent, but only if:
> (a) the principal authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal was reckless in employing him, or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the employer or manager of the employer ratified or approved the act.

The evidence does not establish as a matter of law that the acts of Knapp or his "superior" meet any one of these requirements nor does it establish as a matter of law that either Knapp or his unidentified superior were employees falling within the category of those whose acts are regarded as the acts of the corporation itself, as distinguished from the acts of a mere servant. See *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 403 (1934). Further, the testimony does not show that Knapp's superior knew what was in the house at the time that he authorized Knapp to clean it out.

The question of sufficiency of the evidence to raise issues on the questions of authority, authorization, and ratification is not before us and we make no ruling in that respect.

We conclude that plaintiff has failed to establish the liability of the corporate defendant for exemplary damages and that the portion of the judgment awarding exemplary damages is in error.

The judgment is modified to eliminate exemplary damages and, as modified, is affirmed.