MISSOURI PACIFIC RAILROAD
COMPANY, et al., Appellant,

v.

Pat Robinson DAWSON, Appellee.

No. 13–82–289–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 23, 1983.

Rehearing Denied Dec. 22, 1983.

Gay C. Brinson, Jr., Houston, Frederick J. Bradford, Galveston, for appellant.

Ernest H. Cannon, Houston, Russell McMains, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

YOUNG, Justice.

This is a personal injury case in which the only issues on appeal concern damages. From an adverse judgment of $1,300,000, the appellants bring forward questions on appeal concerning damages awarded appellee for loss of consortium, grief and bereavement, and exemplary damages. Additionally, appellee, by cross-point, brings forth the question of whether the trial court correctly refused an issue on the appellee's cause of action under the Survival Statute Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958). No issue is raised by any appellant over the question of liability or the amount of damages awarded appellee as general damages.

In view of the issues raised by this appeal, a detailed recitation of the facts is unnecessary. Appellee is the widow of Dr. Charlton Elmo Dawson, who died after a collision with appellant Missouri Pacific Railway Company's (hereinafter Mopac) train. Appellant Michael McGill was the engineer of the Mopac train. Appellant Atchison Topeka and Santa Fe Railway Company (hereinafter ATSF) was the owner of certain railroad cars parked near the scene of the accident. The suit was brought by appellee under both the Wrongful Death Statute Tex.Rev.Civ.Stat.Ann. art. 4671 (Vernon Supp.1982) and the Survival Statute Tex.Rev.Civ.Stat.Ann. 5525 (Vernon 1958). The jury found appellants negligent and grossly negligent and awarded appellee $450,000.00 in general damages; $200,000.00 for loss of consortium; $50,000.00 for grief and bereavement; and $300,000.00 from appellants Mopac and ATSF for exemplary damages. In Mopac's and McGill's first point of error, and ATSF's second point of error, the appellants raise the question of whether damages for consortium are recoverable under the Wrongful Death Act. This appears to be a question of first impression to the jurisprudence of this state.

Consortium is defined to include, "the mutual right of the husband and wife

to the affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage." *Whittlesey v. Miller,* 572 S.W.2d 665, 666 (Tex.1978). Loss of consortium can rise from either the intentional or negligent conduct of a third party. *Whittlesey* at 666. It is significant to note that a consortium action is independent and apart from the cause of action of the injured spouse. *Whittlesey* at 667. The recovery sought for loss of consortium is primarily for harm to intangibles or sentimental elements of the marital relationship. Even so, such losses are real, direct and personal and, therefore, not illusory and are subject to translation into dollars by the fact finder. *Whittlesey* at 667. Either spouse has a cause of action for loss of consortium which arises as a result of an injury caused to the other spouse by a third party's negligence. *Whittlesey* at 668.

■ With these principles in mind, we must now view the arguments of the appellants against recovery for loss of consortium in this case. The only real argument raised by the brief of either of the appellants on this issue is that consortium is allowed only when *injury* results in loss of consortium, not death. All appellants argue that recovery under the Wrongful Death Statute is restricted to actual pecuniary loss. We do not agree.

By its very definition, the recovery sought is for *loss* of consortium, which includes either the impairment or total loss of the elements hereinbefore defined as constituting the cause of action. We can find little or no distinction between the situation where one spouse has suffered total paralysis and lives which, according to the definition appellants would have us give the right of recovery, would entitle a spouse to recovery and the death of a spouse which appellants claim extinguishes the right of recovery. Under either fact situation, the affected spouse has suffered a total loss of relationships which have been found to be the basis of recovery. We can find no logic in a rule of law which terminates a spouse's independent cause of action simply because

a tortious act was committed with deadly efficiency. See *Stanford v. McLean Trucking Company,* 506 F.Supp. 1252 (E.D.Tex. 1981).

We are not persuaded that the Wrongful Death Act restricts recovery to pecuniary losses. Indeed, this precise concept was expressly rejected by our Supreme Court in *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983). We would read the opinion in *Sanchez* to support our premise herein. Although the *Sanchez* case specifically involved only the question of the pecuniary loss rule as it applied to minor children in actions brought under the Wrongful Death Act, it is significant that the analogy used by the Supreme Court was to a loss of consortium recovered by a spouse. *Sanchez* at 252. The Court specifically recognized injuries to family relationships as being worthy of compensation and held the same recoverable under the Wrongful Death Act. *Sanchez* at 252. Mopac's and McGill's point of error number one and ATSF's point of error number two are overruled.

■ Mopac's and McGill's second point of error and ATSF's first point of error raise the question of whether damages for grief and bereavement may be recovered under the Wrongful Death Act. We also overrule these points of error.

Prior to the decision of our Supreme Court in *Sanchez,* it was apparent that the rule of law in Texas was that damages recoverable under the Wrongful Death Act were restricted to pecuniary losses. This prohibition expressly included recovery for grief and bereavement. *J.A. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327 (Tex. 1968); *J.A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.); *Hemsell v. Summers,* 138 S.W.2d 865 (Tex.Civ.App.—Amarillo 1940, no writ).

We cannot distinguish significantly, however, between this type of recovery and one for loss of companionship and society of a child, which was allowed in *Sanchez,* so as to say a recovery for grief and bereavement is, as a matter of law, prohibited in a Wrongful Death Act case. We deem it

important to note that appellants make no challenge to the evidence submitted as to appellee's grief and bereavement or the damages suffered by appellee as a result of such grief and bereavement. Appellants ask only that we reverse that portion of the trial court's judgment which awarded appellee $50,000.00 for grief and bereavement because such a recovery is inappropriate as a matter of law. For the reasons previously stated herein, we hold that such recovery is not prohibited as a matter of law in Texas.

We do note that it is difficult to distinguish between a recovery for grief and bereavement and one for mental anguish. Conceivably, the distinction can be carefully drawn and proven by skilled members of the trial bar. We acknowledge that, if the facts support a finding of a causal relationship between a plaintiff's grief and bereavement and some injury, then a monetary recovery is possible. We believe such issues should be allowed, noting that where the facts warrant the Court's may guard against abuses and excesses by remittitur. *Newman v. Minyard Food Stores, Inc.,* 601 S.W.2d 754 (Tex.Civ.App.—Dallas 1980, no writ).

In their remaining points of error, Mopac and ATSF complain that there was no evidence to support the award of exemplary damages found by the jury and assessed by the judgment. Specifically, the jury found appellants Mopac and ATSF to have been grossly negligent and found exemplary damages of $300,000.00 against each appellant. Neither appellant complained of the amount of each award but, rather, argues that, as a matter of law, gross negligence could not have been found against them.

With respect to a corporation's liability for the gross negligence of its servants, Texas has adopted the general rule set forth in the Restatement (2nd) of Torts § 909 (1979) which states:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

(a) The principal or managerial agent authorized the doing and the manner of the act or,

(b) The agent was unfit and the principal or managerial agent was reckless in employing or retaining him, or,

(c) The agent was employed in a managerial capacity and was acting in the scope of employment, or,

(d) The principal or a managerial agent of the principal ratified or approved the act."

See *King v. McGuff,* 149 Tex. 432, 234 S.W.2d 403 (1950); See also *Purvis v. Prattco Inc.,* 595 S.W.2d 103 (Tex.1980); *Bass v. Metzger,* 569 S.W.2d 917 (Tex.Civ.App.— Corpus Christi 1978, writ ref'd n.r.e.).

It is normally improper to award punitive damages against one who himself is personally innocent and, therefore, liable only vicariously. But where there is no fault on the part of a corporation or employer, if a person acting in a managerial capacity either does an outrageous act or approves of the act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions. See Comment b, Restatement (2nd) of Torts, supra.

It is necessary to distinguish between the appellants' respective involvements in the fact situation before specifically addressing their final points of error. Mopac was the owner of the train which killed appellee's husband. ATSF was the owner of certain railroad cars which the jury found the placement of to be a proximate cause of appellee's injuries. In reviewing a "no evidence" point of error in a gross negligence issue, we must look to all the surrounding facts, conditions and circumstances and consider all evidence in a light most favorable to the party in whose favor the verdict has been rendered, indulging every reasonable inference in such party's favor. *Burk Royalty Company v. Walls,* 616 S.W.2d 911 (Tex.1981); *Poole v. Missouri Pacific Railroad Company,* 638 S.W.2d 10 (Tex.App.—Houston [1st Dist] 1982, writ ref'd n.r.e.).

■ With this standard in mind, we must now define our test of review. We recently summarized the *McGuff* test by holding that a corporation may be liable for exemplary damages when its agent, at the time of the wrongful act, was employed in a managerial capacity and acting within the scope of his employment. *Canon U.S.A. v. Carson Map Company, Inc.,* 647 S.W.2d 321 (Tex.App.—Corpus Christi 1982, no writ); See 87 A.L.R.3rd 774. One is acting in a managerial capacity when his acts are regarded as the acts of the corporation itself. *Treasure City v. Strange,* 620 S.W.2d 811 (Tex.Civ.App.—Dallas 1981, no writ). An agent whose acts are capable of creating corporate liability for exemplary damages is one who has the authority to employ, direct and discharge servants, engages in non-delegable or absolute duties; to whom the master has confided management of the whole or a department or a division of his business. *Southwestern Bell Telephone Company v. Reeves,* 578 S.W.2d 795 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Our review of the record reveals no evidence that the collision was the direct act of either appellant or that it was subsequently ratified by either appellant. This leaves us with the question of whether there is any evidence that the collision was the result of an act of an employee of both appellants who was employed in a managerial capacity and was acting within the scope of his employment.

■ We will first look at the evidence concerning the employees of appellant Mopac who were employed in the Bay City Office. The first three employees are appellant McGill, the train engineer, Mike Ramos, the brakeman, and Richard Martindale, the conductor on the train which killed the appellee's husband. We find no evidence any of these employees of Mopac were employed in the capacity necessary to bind their principal for exemplary damages. The only member with any managerial responsibility was the conductor and that responsibility was limited to the operation of that specific train. The conductor had no authority whatsoever over the placement of cars on sidings in Bay City. A conductor can not subject his railroad employer to liability for gross negligence. *Lakeshore and M.S.Ry.Co. v. Prentice,* 147 U.S. 101, 114, 13 S.Ct. 261, 265, 37 L.Ed. 97 (1892). See *McGown v. I. & G.N.Ry.Co.,* 85 Tex. 289, 20 S.W. 80 (1892). The next employee of Mopac at the scene was the dispatcher. Although the existence of this individual is alluded to by the witnesses, his duties and even his name are not in the record before us. Clearly, there is no evidence that the dispatcher had the requisite capacity to bind Mopac for exemplary damages. The remaining Mopac employee is Henry Smith, the agent for Mopac (not the station manager as he is referred to in appellee's brief). Smith testified that his duties involved responsibility for the station and facilities and he was responsible for making up and dispatching Mopac trains. He testified that he was aware that the ATSF cars were on the siding but that their location on the siding was ATSF's responsibility and an ATSF crew placed the cars on the siding. He stated he was unaware of the proximity of the cars to the street until after the accident. He stated unequivocally that he was not responsible for safety compliance in the placement of cars on sidings.

■ Viewing this evidence in the light most favorable to appellee, we find no evidence to support the submission of issues number 25 through 28. Mopac's point of error three and four are sustained.

■ Turning now to the question of ATSF's liability for exemplary damages, we find again that there was no evidence to support the answers of the special issues concerning gross negligence and exemplary damages. There is no evidence as to who, if anyone, from ATSF was responsible for the placement of the cars on the siding. The only evidence concerning ATSF's liability for the cars, outside of their ownership, was the testimony of Henry Smith that the cars must have been placed on the siding by an ATSF crew because they were not placed there by a Mopac crew. There is no evidence to establish any of the requisite

elements necessary to hold ATSF liable for exemplary damages. Therefore, the submission of special issues 29 through 32 was error and appellant ATSF's points of error three and four are sustained.

Appellee raises one cross-point of error which alleges that the trial court erred in refusing to submit appellee's special issues for conscious pain and suffering and mental anguish of the deceased. Appellee pled a cause of action under Tex.Rev.Civ.Stat. Ann. art. 5525 (Vernon 1958) for physical pain and mental anguish suffered by the deceased. Suit was brought by the deceased's wife who, as an heir of the deceased, was entitled to prosecute such a cause of action. The only evidence concerning the pain and suffering and mental anguish of the deceased comes from the testimony of Ray Sharp, the medic who arrived at the scene of the accident just prior to the death of the decedent. Sharp testified that at the time he reached the decedent he was moaning and groaning and attempting to move. He also testified that the decedent had a level of consciousness or semiconsciousness.

We hold that there was some evidence to support the submission of an issue of conscious pain and suffering to the jury. Appellee's cross-point is sustained and the appellee's cause of action for recovery under the Survival Statute is severed and remanded to the trial court for trial on that issue alone. See *Bedgood v. Madalin,* 600 S.W.2d 773 (Tex.1980). The judgment of the trial court is AFFIRMED as to all damages awarded except for the $600,000.00 in exemplary damages. The judgment of the trial court is REVERSED and judgment is here RENDERED that there be no recovery against appellant Mopac or appellant ATSF for exemplary damages. The cause is further REVERSED AND REMANDED after severance for trial on the issue of appellee's claims under Tex.Rev.Stat.Ann. art. 5525 (Vernon 1958). Costs are taxed sixty percent to appellants Mopac and ATSF and forty percent to appellee Dawson.