**GROUP HOSPITAL SERVICES, INC. and Group Life & Health Insurance Company, Appellants,**

v.

**Linda DANIEL, Appellee.**

**No. 13–84–467–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 31, 1985.

Opinion on Motion to Reverse and Remand Feb. 6, 1986.

David H. Brown, Houston, Leo Salzman, Harlingen, for appellants.

E.R. Fleuriet, Harlingen, Russell McMains, Corpus Christi, for appellee.

Before UTTER, KENNEDY and SEER-DEN, JJ.

## OPINION

UTTER, Justice.

Appellee brought suit against appellants for breach of contract, fraud, negligence, gross negligence and violations of the Texas Insurance Code and the DTPA.[1] The jury awarded appellee the unpaid medical bills, $125,000.00 for mental anguish, $21,000.00 for attorneys fees, and $10,000,000.00 for punitive damages. We Reverse and Remand.

Appellee is a chronic allergy sufferer. From the record there appears to be very few substances to which appellee is not allergic. In May of 1982, after years of apparently unsuccessful allergy treatments by a local allergy specialist in Harlingen, Texas, appellee was referred to the Environmental Care Unit (ECU) at the Carrollton Hospital in Dallas, Texas. The ECU is a somewhat controversial allergy treatment facility where allergies are identified by isolation of the patient from other factors in the patient's environment. Appellee was a beneficiary under a group health insurance policy issued by appellant

---

1. TEX.BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon Supp.1985).

to appellee's husband. Before undergoing treatment at the ECU, appellee called appellant's customer service number. She spoke briefly with an unidentified customer representative who told her the treatment was covered. Appellee then called appellants' customer service representative again, a few minutes later and added that the treatment would cost around $10,000.00. She was again assured by the customer representative that the treatment was covered.

In July of 1982, appellee went to Dallas to begin treatment. At the time of her admission to the ECU her insurance coverage was again verified, this time by an employee of the Carrollton Hospital. Appellee spent thirty-one days in the ECU. Upon completion of the treatment, Carrollton Hospital billed appellants $9,970.55. This claim was initially paid by appellants. The physicians who treated appellee in the ECU submitted a separate bill to the appellants in the amount of $5,019.55. Appellants rejected the doctors' claim and then sought reimbursement from appellee on part of the hospital's claims which appellants had already paid. The total amount of doctor and hospital bills rejected by appellants amounted to $12,118.68.

After making demand on appellee for reimbursement for amounts already paid, appellants turned the matter over to a collection agency. Ultimately, appellee was able to work out a pay off of the disputed claims. Subsequently, appellee, after notice to appellants brought this suit which resulted in a jury verdict in her favor.

Appellants' first, third and eighth points of error challenge the legal and factual sufficiency of the evidence to support the jury's finding of fraud. In response to special issues 6 through 11 the jury found that appellants recklessly represented to appellee that they would pay for the medical services in question. However, in response to special issue 12 the jury found that at the time such representation was made, the speaker did not know the representation was false.

■ We find sufficient evidence to support the jury's findings. Appellants argue further [that even if there is sufficient evidence to support the jury's findings of fraud] these findings will not support an award of punitive damages and mental anguish. It is appellants' position that the requisite scienter necessary for punitive damages is established only where the speaker has knowledge of the falsity; i.e., intends to deceive or makes a malicious statement or makes the statement with conscious indifference to the rights of the plaintiff. *See Ware v. Paxton*, 359 S.W.2d 897, 899 (Tex.1962). Appellants argue that since the jury refused to find in special issue No. 12 that the representations made by the appellants to appellee were made with knowledge of their falsity a mere finding of recklessness will not support punitive damages and mental anguish.

■ In a fraud case, a finding that the deception was done with the intent to harm or with conscious indifference to the rights of others will support an award of exemplary damages. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981); *Dennis v. Dial Finance & Thrift Co.*, 401 S.W.2d 803 (Tex.1966). Clearly under the facts of this case the act of appellants in verifying appellee's coverage without making further inquiry into the nature of appellee's treatment, especially where the policy contained numerous exclusions, was a reckless act. However, the question of whether this misrepresentation was made with the intent to injure appellee or with conscious indifference to appellee's rights remains. When the jury refused to find that the statement was made with knowledge of its falsity it precluded a finding that the statement was made with the intent to injure appellee. No issue was submitted to the jury on whether the statements were made with conscious indifference to appellee's rights. This leaves the question of whether the finding that the statement was made recklessly establishes the necessary intent. The question is really not one of semantics, but rather of subjective intent.

"Generally, in order to recover exemplary damages, the plaintiff must show that

the offending party acted intentionally, willfully or with a degree of gross negligence which approximated a fixed purpose to bring about the injury of which plaintiff complains." *International Armament Corp. v. King,* 674 S.W.2d 413 (Tex.App.—Corpus Christi 1984), *aff'd,* 686 S.W.2d 595 (Tex.1985).

■ The mere fact that an act is intentional or is legally wrongful will not support an award of punitive damages. The act must be intentionally wrongful, or must be motivated by ill will and a desire to injure the other party. Fraudulent or grossly reckless conduct may sometimes justify a finding of such motivation. The Texas Supreme Court in *Chastain v. Koonce,* 700 S.W.2d 579 (1985) reiterated its definition of gross negligence as follows:

In *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981), this court defined gross negligence as:

[T]hat entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

We also wrote:

What lifts *oridinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

■ Where there is an honest difference of opinion as to the interpretation or the legal effect of a contract, the sincere pursuit of a claimed legal right under that contract by one of the parties cannot form the basis of an award of punitive damages. *Kilgore Federal Savings & Loan Assoc. v. Donnelly,* 624 S.W.2d 933 (Tex.App.—Tyler 1981, writ ref'd n.r.e.); *Scurlock Oil Co. v. Joffrion,* 390 S.W.2d 526 (Tex.Civ.App.—Tyler 1965, no writ); *Cantrell v. Broadnax,* 306 S.W.2d 429 (Tex.Civ.App.—Dallas 1957, no writ); *Upham Gas Co. v. Smith,* 247 S.W.2d 133 (Tex.Civ.App.—Fort Worth 1952, no writ); *Pacific Finance Corp. v. Gilkerson,* 217 S.W.2d 440 (Tex.Civ.App.—Beaumont 1948, writ ref'd n.r. e.); *Security State Bank of Tahoka v. Spinnler,* 78 S.W.2d 275 (Tex.Civ.App.—Amarillo 1935, no writ).

■ Appellants' act is akin to what is termed a negligent misrepresentation by the authors of the Restatement of Torts. *See,* Restatement (Second) of Torts § 425 et seq and § 552 et seq (1977). Appellants paid approximately three thousand dollars of appellee's medical and doctor bills. This payment by appellants demonstrated that appellants recognized that appellee was at least partially covered by her policy with appellants. There is insufficient evidence to support any implied finding that the statements on the part of appellants' service representatives were known by the speaker to be false and made with wrongful scienter that will support a recovery of punitive damages. The present case does not include the aggravating circumstances necessary to support the findings of the punitive damages. The evidence shows at most that the appellants' employees acted carelessly and will not support a finding of willfullness, wantonness or malice. *See Corpus Christi National Bank v. Lowry,* 662 S.W.2d 402 (Tex.App.—Corpus Christi 1983, no writ).

The jury's findings on the fraud issues are therefore legally insufficient to support the award of punitive damages. Appellants' first, third and eighth points of error are sustained.

■ Appellants' second point of error is multifarious. The first part of the point of error is merely the factual counterpart of the legal issues raised in the first point of error. These questions are adequately addressed in our treatment of appellants' first point of error. In the second part, the appellants argue that there was an irreconcilable conflict between the jury's answers to special issues 1, 2 and 4 and the special

issues discussed under appellants' first point of error. Special issues 1, 2 and 4 appear to be appellants' defensive issues concerning the necessity of services performed on appellee at the ECU and which were all answered adversly to appellants' contentions. We find no conflict between the jury's response to these issues and the subsequent findings by the jury of fraud, violation of the DTPA and acts of negligence by the appellants. *See C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966). Appellants' second point of error is overruled.

In points of error four through six, appellants assert that the evidence was factually and legally insufficient to support the submission of and the jury's findings on the special issues concerning DTPA violations and breach of contract. Appellants' real argument under these points of error is that there is insufficient evidence to support the jury's finding that appellants made a false statement which was relied upon by appellee.

The record clearly demonstrates that appellants' agents told appellee her allergy treatments were covered. The record also clearly shows that appellee relied on this statement and incurred personal liability for medical services in excess of $14,000.00. Appellee further testified she would not have commenced the treatment without assurances that the treatment was covered by insurance and that she could not personally afford to pay for such treatment. Appellants' statement that the treatment was covered, while technically not an absolute falsity was made without adequate inquiry by appellants into the treatment involved. The statement serves as an adequate factual basis for the jury's response to special issues 8 and 13–20. Appellants' points of error four through six are overruled.

In their seventh point of error, the appellants challenge the trial court's action in granting appellee a post trial amendment to its pleadings to include a pleading on unconscionable conduct. A trial court has broad discretion in allowing trial amendments and absent a showing of some prejudice by the opposing party this Court will not find an abuse of discretion by the trial court in allowing such an amendment. *Schrader v. Artco Bell Corp.,* 579 S.W.2d 534 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Fry v. Guillote,* 577 S.W.2d 346 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Hartford Accident and Indemnity Co. v. Thurmond,* 527 S.W.2d 180 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). *See* TEX R.CIV.P. 66. Appellee's trial pleadings clearly stated a cause of action under the DTPA. Since the performance of an unconscionable act is grounds for recovery under the DTPA we find no abuse of discretion by the trial court in allowing the amendment. Appellants' seventh point of error is overruled.

Appellants' points of error nine and ten challenge the legal and factual sufficiency of the evidence to support the jury's findings that appellants committed a negligent act and a grossly negligent act against appellee which was a proximate cause of damages to her. While not directly raised by the arguments this point of error raises the question of whether a tort, independent of fraud, can arise out of these facts. While we have no trouble with the evidence supporting the jury's finding of breach of contract, this evidence does not necessarily translate into a tort action. At best the record only supports the factual scenario wherein appellants acted recklessly in wrongfully representing to appellee that her treatment at the ECU would be covered (i.e. paid). Is this tortious conduct? The only tort theory plead by appellee was that of negligent supervision of employees by appellant. No issue was submitted to the jury to support appellee's claimed ground of negligence. The only negligence issue submitted to the jury was as follows:

SPECIAL ISSUE NO. 21

Was there any negligent act or omission by employees of Group Hospital Services, Inc. that was a proximate cause of any actual damages to Linda Daniel? Answer "Yes" or "No".

We, the Jury, Answer: <u>Yes</u>

■ To impose liability for negligence there still must be a duty and a violation of that duty, with damages proximately caused by such violation. The duty in such cases is that which the law imposes upon all persons; the duty of care. This duty is one to act as a reasonably prudent person would act under the same or similar circumstances considering the reasonably foreseeable risk or probability of injury to persons similarly situated as the plaintiff. In reality, the determination of the duty of care and whether the violation of that duty is negligence involve the same considerations and the terms are essentially the same. *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975); *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Terry, *Negligence* 29 Harv.L.Rev. 40 (1950); Green, *Duties, Risk, Causation Doctrines,* 41 TEX.L.REV. 57 (1962).

■ We do not believe that the facts of this case support the jury's findings of negligence. While the facts support a finding of reckless conduct on the part of appellants, no evidence raises this conduct beyond the context of breach of contract. We perceive no independent duty owed appellee by appellants outside of that which existed in the contract between the two parties. It is abundantly clear that appellants' decision not to pay appellee's claims was made under the terms of the contract between the two parties and was a legitimate dispute over the meaning of the contract. While the jury ultimately found this action by appellants to be in breach of the contract this does not simultaneously create a tort duty. We believe, with exception of the fraud findings, that the evidence is insufficient to support the jury's findings of negligence and accordingly gross negligence. Appellee's recovery should be restricted to the terms of the contract between the parties. *Gross v. Connecticut General Life Insurance Co.,* 390 S.W.2d 388 (Tex.Civ.App.—El Paso 1965, no writ). Appellants points of error nine and ten are sustained.

Appellants' points of error eleven through thirteen complain of the legal and factual sufficiency of the evidence to support the jury's findings that the misrepresentation made to appellee were corporate acts. In response to special issues 22 through 24 and 26 through 28 the jury found managerial employees of appellants acting within the course and scope of their employment had committed a grossly negligent act against appellee which were subsequently ratified by appellants.

As this Court recently pointed out in *Missouri Pacific Railroad Co. v. Dawson,* 662 S.W.2d 740 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), Texas has adopted the general rule set forth in the Restatement (Second) of Torts § 909 (1979) which states:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> (a) the principal or managerial agent authorized the doing and the manner of the act, or
>
> (b) the agent was unfit and the principal or managerial agent was reckless in employing or retaining him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or,
>
> (d) the principal for a managerial agent of the principal ratified or approved the act.

*See King v. McGuff,* 234 S.W.2d 403 (Tex. 1950); *See also Purvis v. Prattco Inc.,* 595 S.W.2d 103 (Tex.1980); *Bass v. Metzger,* 569 S.W.2d 917 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ In *Dawson,* we restated the *McGuff* rule that a corporation may be liable for exemplary damages when its agents, at the time of the wrongful act, were employed in a managerial capacity and were acting within the scope of their employment. *Cannon, U.S.A. v. Carson Map Co., Inc.,* 647 S.W.2d 321 (Tex.App.—Corpus Christi 1982, no writ). An agent is acting in a managerial capacity when his acts are regarded as the acts of the corpo-

ration itself. *Treasure City v. Strange*, 620 S.W.2d 811 (Tex.Civ.App.—Dallas 1981, no writ.). An agent whose acts are capable of creating corporate liability for exemplary damages is one who has the authority to employ, direct, and discharge servants, engage in non-delegable or absolute duty; to whom the master has confined management of the whole or department or division of his business. *Southwestern Bell Telephone Co. v. Reeves*, 578 S.W.2d 795 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

 Turning now to the record, specifically the jury findings, we find no issue submitted or finding made by the jury of corporate misconduct with respect to the act of making the telephone statement. There is no jury finding that the anonymous telephone operator was a managerial employee. There is no jury finding that management authorized the manner in which the telephone operators performed the act of responding to appellee's inquiries. There is no finding that the telephone statements were ratified or adopted by appellants' management. There is no finding that appellants acted recklessly in hiring the customer service agents.

The record does show that at the close of the evidence the parties stipulated that the customer service agents were authorized within the course and scope of their employment to respond to telephone inquiries. However, there was no stipulation that these individuals were managerial employees. The one customer service agent who did testify, Mrs. Courtney, stated that she was authorized to give information over the phone concerning benefits to be paid under the policy in question. She further testified that she had received six weeks of training for her position. However, her authority to bind the corporation was specifically negated by the testimony of Dr. Harwell who was a medical expert working for appellants evaluating claims. Dr. Harwell stated that it made no difference to her whether coverage was verified by the customer service agents. She had to make the final determination after receiving the claim and reviewing the services provided. This position was further reinforced by appellants' general counsel, who stated that no customer service agent had the right to make coverage decisions.

Our review of the record reveals no finding by the jury nor any evidence to support any implied finding that the wrongful statement made to appellee by appellants' customer service representative was the direct act of the appellants or was subsequently ratified by the appellants. Nor do we find any evidence that the individual who made the statements to appellee was an employee in a managerial capacity. Appellants' points of error eleven through thirteen are sustained.

 Appellants' fourteenth and fifteenth points of error attack the legal and factual sufficiency of the evidence to support the jury's findings of the amount of damages suffered by appellee for past and future mental anguish.

The term 'mental anguish' implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). *See K-Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In order to recover for mental anguish, it is necessary to offer proof of more than mere worry, anxiety, vexation or anger. *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd, n.r.e.); *Ryder Truck Rentals, Inc. v. Latham*, 593 S.W.2d 334 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); *Cactus Drilling Co. v. McGinty*, 580 S.W.2d 609 (Tex. Civ.App.—Amarillo 1979, no writ).

 The evidence of mental anguish contained in the record is that appellee was "scared" because of her personal financial situation created by the unpaid hospital and

doctors' bills and that, once she was nervous or scared, her headache and stomach disorders were amplified. It should be noted that her headaches and stomach disorders are the identical symptoms which appellee testified she had suffered from during her entire adult life because of her allergy condition. An award of $125,000.00 in past and future mental anguish is excessive in light of the record on this case. Ordinarily we would order a remittitur but in view of our disposition of this cause no order is necessary. Appellants' fourteenth point of error is sustained, making it unnecessary to reach appellants' fifteenth point of error.

Appellants' sixteenth and seventeenth points of error concern the excessiveness of the ten million dollars in exemplary damages awarded against appellants. Appellants' complaints go to both the sufficiency of the evidence to support such award and a request for remittitur. In view of our holding that the evidence was legally insufficient to support a jury finding of exemplary damages, we decline to discuss the excessiveness of such award.

 Appellants' eighteenth point of error complains of the failure of the trial court to grant appellants' motion for separate trial. Pursuant to TEX.R.CIV.P. 174(b), appellants timely filed a motion requesting that appellee's breach of contract claims be tried separately from the remainder of her claims. After hearing oral argument, the trial court denied this motion. The trial court has broad discretion in matters of consolidation and severance, and a trial court's actions on such matters will not be disturbed absent a showing of abuse of discretion. *Lambert v. H. Molson and Co., Inc.,* 551 S.W.2d 151 (Tex.Civ.App.— Waco 1977, writ ref'd n.r.e.); *Valdez v. Gill,* 537 S.W.2d 477 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.); *See King v. Tubb,* 551 S.W.2d 436 (Tex.Civ.App.—Corpus Christi 1977, no writ.). While the appellee's various causes of action were of a severable nature, we find no abuse of discretion in the trial courts refusal to grant the severance. Additionally, we note that the appellants' motion argues for severance of the DTPA and Insurance Code violations alleged by appellee. However, appellants argue to this Court that the severance should have been granted because of the prejudicial nature of trying the breach of contract and *tort* claims together. The issue is therefore waived. *Texas Parks and Wildlife Dept. v. Champlin Petroleum Co.,* 616 S.W.2d 668 (Tex.Civ.App.— Corpus Christi 1981, writ ref'd n.r.e.). Appellants' eighteenth point of error is overruled.

• In their nineteenth through twenty-first points of error, the appellants complain of the action of the trial court in admitting evidence of the denial of other similar claims by the appellants and the effect of a $10,000,000.00 punitive damage award on appellants' policyholders. Appellants' complaints concern first the testimony of Charlene Edelstein. Ms. Edelstein testified she also had a lawsuit pending in Cameron County against appellants based on similar facts to those which precipitated suit. Next, appellants complain that the error in allowing Ms. Edelstein to testify was compounded by the testimony of Peter Dolan and Dr. Alfred Johnson. Dolan testified that other insurance companies had denied claims from the ECU. Dr. Johnson testified that appellants had denied other claims for treatment at the ECU.

TEX.R.EVID. 401 provides that: "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

TEX.R.EVID. 402 provides that all relevant evidence is admissible and all evidence that is not relevant is inadmissible. The question then is really for us to decide whether or not this evidence was relevant in this case. This consideration requires that we break down the term relevant into the two concepts of materiality and relevance. "Material" should refer to proof, whether direct or circumstantial, of a pleaded element of the case or other provable matters such as impeachment or background information helpful to the trier of fact. "Relevant" in turn should refer only

to proof by circumstantial evidence; circumstantial proof is proof by inference. Wendorf, *The 1984 Texas Rules of Evidence Amendments,* 37 Baylor L.REV. 81, 88 (1985); *See* McCormick, *The Law of Evidence* § 185 (2nd Ed.1972).

 Clearly TEX.R.EVID. 401 and 402 disallow evidence that is immaterial in the sense that it is directed to a proposition not an issue or irrelevant in the sense that it is not probative of the proposition for which it is offered. Mrs. Edelstein's testimony was uninvited, immaterial, and irrelevant in its entirety. The only purpose advanced by appellee's attorney for its admission was articulated in the argument on appellants' motion for limine. He asserted that evidence of denial of similar claims would show a "pattern" of conscious disregard of insureds rights and, therefore was relative to the amount of punitive damages awarded. This position has no basis in the pleadings nor is it in any way cumulative of other testimony offered by appellants or in rebuttal. The testimony of Peter Dolan and Dr. Alfred Johnson was irrelevant and for the same reasons inadmissible. Appellants' points of error nineteen through twenty-one are sustained.

 Appellants' twenty second point of error complains of the admission of the testimony of the witness Fleishman. Appellee called Neill Fleishman, appellants' in house attorney who was attending the trial as an adverse witness. Appellee's attorney then posed a question to Mr. Fleishman inquiring as to whether or not an award of $10,000,000.00 against appellants would increase the premiums for the individuals covered by appellants in the amount of two or three dollars for one year. Mr. Fleishman responded that he could not answer the question because he did not possess knowledge of sufficient facts. Appellee's attorney then volunteered that "if there are 3,000,000 policy holders in the State of Texas, that would be about three dollars a year?" Mr. Fleishman replied that "that would be real close." While the relevancy of this line of testimony is highly questionable, the soliloquy really amounts to no more than a series of unanswered hypothetical questions posed to Mr. Fleishman by the appellants' attorney. Appellants' twenty-second point of error is overruled.

 Appellants' twenty-third point of error concerns the broad submission of the special issues concerning gross negligence. Special issues number twenty-two and twenty-six inquired whether or not the appellants committed an act of gross negligence. It is appellants' position that, absent an instruction limiting the jury's inquiry to the act of negligence plead by appellee (negligent supervision) the jury was able to consider non-negligent conduct in answering the issue. TEX.R.CIV.P. 277, as amended in 1973, permits the trial court to submit broad issues to the jury. An issue is not now objectional because it is general. Rule 277 should be given a liberal construction. *State of Texas v. Norris,* 550 S.W.2d 386 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Security Federal Savings & Loan Assoc. v. DeWitt,* 536 S.W.2d 262 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Appellants' twenty-third point of error is overruled.

 Appellants' twenty-fourth point of error raises the novel question of whether or not it is error for the trial court to allow a different judge to hear final arguments in the case. It is the general duty of the trial judge to supervise final arguments and rule on all matters that arise out of the final arguments. TEX.R.CIV.P. 269. It is difficult to imagine how a trial judge who has not heard the evidence presented, especially in a case of the duration of this case, could intelligently rule on objections to statements outside the record or for that matter to even be able to discern whether an attorney has complied with Rule 269 in his argument. However, in light of our finding that no reversible error occurred in the final arguments in this case, we find no error in the trial court's action in this case. Appellants' twenty-fourth point of error is overruled.

Appellants' twenty-fifth and twenty-sixth point of error address the issue of improper jury argument by appellee's counsel. In *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835 (Tex.1979), the Texas Supreme

Court set forth the test for determining improper jury argument:

> In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument.

*Standard Fire Insurance Co. v. Reese,* 584 S.W.2d at 839.

■ In reviewing the record, we find the arguments of counsel for appellee take on the characteristics of a personal vendetta against appellants. The argument is replete with speculation as to acts not in the record, personal attacks on appellants' witnesses and attorneys, appeals to prejudice and bias, and the use of mathematical hieroglyphics to place a formula for exemplary damages before the jury. However, in light of the test set forth in *Standard Fire Insurance Co. v. Reese,* we must overrule appellants' points of error twenty-five and twenty-six. *See Ford Motor Co. v. Nowak,* 638 S.W.2d 582 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Bosquez v. H.E. Butt Grocery Co.,* 586 S.W.2d 680 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Appellants' twenty-fifth and twenty-sixth points of error are overruled.

Appellants' twenty-seventh point of error concerns the action of the trial court allowing a post verdict amendment to the appellee's pleadings increasing the amount of damages sought for mental anguish from $15,000.00 to $125,000.00. Appellee's first amended petition failed to specifically plead an amount of damages sought by appellee for mental anguish. Appellants' timely excepted to this pleading. Counsel for appellee apparently agreed with this special exception. The record contains a letter from appellee's counsel to appellants' counsel wherein appellee's counsel acknowledges that appellants' special exception to appellee's pleadings for damages for mental anguish was proper and agreeing to limit his request for damages for mental anguish to $15,000.00. Appellee's trial pleadings sought damages for mental anguish in the amount of $15,000.00. After the jury had responded to appellee's special issues on damages for mental anguish in the amount of $125,000.00, appellee sought and obtained a post verdict pleading amendment increasing the amount of damages sought for mental anguish to $125,000.00.

■ The only theory on which appellee's amendment to the pleadings could have been granted would be under Tex.R. Civ.P. 67. Rule 67 allows amendments to pleadings to conform to issues raised by express or implied consent during trial. However, in this case, there was obviously no consent to the increase in damages. The pleadings were very specific as to the amount of damages being sought. The fact that the evidence allowed the jury to reach a sum greater than that pled by appellee does not in itself create the consensual situation contemplated by Rule 67. Until the time appellee tendered her amendment to the pleading and sought to further increase her damages pled, the appellants were entitled to rely upon the maximum claim specified in appellee's trial pleadings. *Cabrera v. Delta Brands, Inc.,* 538 S.W.2d 795 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); *Williams v. General Motors Corp.,* 501 S.W.2d 930 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

Since the allowance of the amendment permitted a tremendous increase in the amount of damages at a point in time where appellants could not anticipate or defend against the pleading, the trial court's allowance of the amendment was harmful and an abuse of discretion. *See Burk Royalty Co. v. Walls*, 596 S.W.2d 932 (Tex.Civ.App.—Fort Worth 1980), *aff'd*, 616 S.W.2d 911 (Tex.1981).

Appellee mistakenly relies on this Court's opinion in *Lavender v. Hofer*, 658 S.W.2d 812 (Tex.App.—Corpus Christi 1983), *rev'd on other grounds* 679 S.W.2d 470 (Tex.1984). In *Lavender* we allowed such an amendment only because the appellants had failed to demonstrate that they were in any way prejudiced by the amendment. Here, the appellants have clearly demonstrated the harm caused and its prejudicial effect on their case. Appellants' twenty-seventh point of error is sustained.

Appellants' twenty-eighth point of error alleges that cumulative harm has resulted from the trial court's errors which requires reversal. Because we have found reversible error in other acts of the trial court, we therefore overrule this point of error. *See* Dahlberg, *Analysis of Cumulative Error in the Harmless Error Doctrine*, A Case Study, 12 Tex.Tech.L.Rev. 561 (1981).

The judgment of the trial court is REVERSED, and the cause is REMANDED.

## OPINION

### On Joint Motion to Reverse and Remand

Appellants, Group Hospital Services, Inc., and Group Life & Health Insurance, perfected their appeal from a Judgment entered by the 107th District Court of Cameron County, Texas, in cause number 83–2236–A. After the appeal had been perfected, and after this Court's decision had been rendered on December 31, 1985, the parties filed a joint motion to reverse and remand in aid of settlement.

The Court, having considered the motion and the record on file, is of the opinion that the motion should be granted. The joint motion to reverse and remand in aid of settlement is hereby granted, and the cause is hereby REVERSED and REMANDED in aid of settlement to the trial court.

Costs of the appeal are adjudged against appellee, Linda Daniel.